PERKINS, Admx., Appellant,

v.

OHIO DEPARTMENT OF TRANSPORTATION, Appellee.

UTTER, Admx., Appellant,

v.

OHIO DEPARTMENT OF TRANSPORTATION, Appellee.

[Cite as *Perkins v. Ohio Dept. of Transp.* (1989), 65 Ohio App.3d 487].

Court of Appeals of Ohio,
Franklin County.

Nos. 88AP–510, 88AP–511.

Decided Dec. 5, 1989.

488

*Joseph W. Alig; Heuck & Ganson* and *Kenneth Heuck, Jr.,* for appellant Cynthia Perkins.

*Don W. Ziglar,* for appellant Marcia Utter.

*Anthony J. Celebrezze, Jr.,* Attorney General, and *William J. McDonald,* for appellee.

---

STRAUSBAUGH, Judge.

This is an appeal by plaintiffs, as administratrices of their husbands' estates, from a judgment of the Court of Claims rendering a verdict in favor of defendant on the issue of negligence arising out of an automobile accident in which plaintiffs' husbands were killed. Plaintiffs' appeals were consolidated for trial.

The accident in the present case occurred at the intersection of State Routes 590 and 105, which are both two-lane, rural roads in Ottawa County. State Route 590 runs in a north-south direction and intersects with State Route 105 which runs east-west. State Route 590 has stop signs at the intersection while State Route 105 has no such traffic control devices. On July 2, 1983, the weather was clear and sunny and the pavement was dry. At approximately 10:30 a.m., Gary Perkins was driving a pickup truck west on State Route 105 with two passengers, John Utter and a third passenger not a party to this action. Donald Weinandy, accompanied by passenger James Williamson, was driving a large step-van north along State Route 590. Heading south on State Route 590 and stopped at the intersection was a pickup truck driven by a man named Lipstraw, who was signalling to make a left turn onto eastbound State Route 105. As Weinandy approached the intersection with State Route 105, he apparently failed to observe the stop sign and warning signs preceding the intersection and continued into the intersection, striking the Perkins vehicle and causing it to hit the Lipstraw vehicle. As a result of Weinandy's vehicle running the stop sign, Lipstraw, Perkins, Utter and the third passenger in the Perkins vehicle were all killed.

On June 28, 1985, plaintiffs on behalf of the estates of Gary Perkins and John Utter filed separate actions against defendant, the Ohio Department of Transportation, alleging negligence. On April 29, 1987, both cases were consolidated for trial. An entry was subsequently entered on September 17, 1987, bifurcating the issues of liability and damages. In preparation for trial, plaintiffs took depositions throughout the months of October and November 1987. Plaintiffs supplemented their interrogatories on October 30, 1987. Defendant then filed a motion *in limine* on November 5, 1987, requesting that the trial court exclude the testimony of two of plaintiffs' three expert witnesses, Tom Huston and Joseph Treiterer, on the basis of unfair surprise. Subsequently, the trial court granted defendant's motion excluding the testimony of two of plaintiffs' experts. On November 27, 1987, defendant then

filed a motion to quash information collected as part of a federal hazard elimination program, which was granted by the trial court.

The case was then tried before the Court of Claims beginning on November 30, 1987 and continuing through December 2, 1987. On May 2, 1988, the trial court entered judgment in favor of defendant.

On appeal, plaintiffs assert five assignments of error for our review:

"1. The trial court erred to the prejudice of the plaintiffs by finding that the defendant was not negligent.

"2. The trial court erred to the prejudice of the plaintiffs by finding that the defendant's negligence was not one of the proximate causes of the accident.

"3. The trial court erred by granting defendant's motion in limine limiting plaintiffs' expert witnesses to testify.

"4. The trial court erred by failing to allow expert opinion testimony.

"5. The trial court erred by failing to allow testimony of prior incidents of drivers going through the northbound stop sign on S.R. 590 as to notice of dangerous conditions."

Under their first assignment of error, plaintiffs argue that the trial court erred by finding that defendant was not negligent since defendant failed to comply with the specifications which it has set forth governing the design and usage of traffic control devices. Plaintiffs point out basically five instances in which defendant breached its duty to properly place and maintain traffic signs in accordance with its own specifications. As a result, plaintiffs argue that defendant failed to provide adequate warnings to drivers due to the improper placement and distance of signs and the foreseeable distractions preceding the intersection.

Pursuant to its statutory duty imposed by R.C. 4511.09, defendant has adopted a Manual of Uniform Traffic Control Devices for Streets and Highways ("manual"). R.C. 4511.10 provides in pertinent part that "[t]he department of transportation may place and maintain traffic control devices, *conforming to its manual and specifications,* upon all state highways as are necessary to indicate and to carry out sections 4511.01 to 4511.78 and 4511.99 of the Revised Code, or to regulate, warn, or guide traffic." (Emphasis added.) R.C. 4511.11(D) specifically states that "[a]ll traffic control devices erected on a public road, street, or alley, *shall conform to the state manual and specifications.*" (Emphasis added.) Not all portions of the manual regarding the placement and maintenance of traffic control devices are mandatory, thereby leaving some areas within the discretion and engineering judgment of defendant. However, where the defendant chooses to act, it is

under a duty to conform with the requirements of its own manual. See *Pierce v. Ohio Dept. of Transp.* (1985), 23 Ohio App.3d 124, 23 OBR 235, 491 N.E.2d 729; R.C. 4511.10 and 4511.11. See, also, *Reynolds v. State* (1984), 14 Ohio St.3d 68, 14 OBR 506, 471 N.E.2d 776, paragraph one of the syllabus.

The foregoing is in accord with Section 1C of the manual, which provides in pertinent part:

"The decision to use a particular device at a particular location should be made on the basis of an engineering study of the location. Thus, while this Manual provides standards for design and application of traffic control devices, the Manual is not a substitute for engineering judgment. *Except for sections of this Manual that mandate the installation of a traffic control device, it is the intent that the provisions of this Manual be standards for traffic control device installation, but not a requirement for installation.* Qualified engineers are needed to exercise the engineering judgment inherent in a selection of traffic control devices, just as they are needed to locate and design the roads and streets which the devices complement. \* \* \* " (Emphasis added.)

The Supreme Court in *Winwood v. Dayton* (1988), 37 Ohio St.3d 282, 525 N.E.2d 808, cited this section and held that a municipal decision regarding the installation of a traffic light at an intersection was one " \* \* \* requiring the consideration of basic policy and the exercise of independent judgment." *Id.* at 284, 525 N.E.2d at 810. The court held that the city could not be held liable for a decision not to install a traffic signal at an intersection since such a decision was a discretionary government function. However, in a footnote the court stated that there existed " \* \* \* no evidence in the record that any traffic control device was mandated by the manual at the intersection in question." *Id.* at 285, 525 N.E.2d at 811, fn. 2. It would appear from this statement that had the court been presented with evidence that a traffic control device was required at the intersection, the court's decision may have been otherwise.

The record in the present case indicates that a vehicle traveling north on State Route 590, approaching the intersection with State Route 105, would first pass a "route junction" sign, approximately five hundred forty-six feet from the stop sign located at the intersection. The vehicle would then pass a "stop ahead" sign, approximately four hundred sixty feet from the stop sign, and then a destination sign located approximately three hundred feet from the stop sign. Finally, the vehicle would pull up to the stop sign at the intersection.

The first instance in which plaintiffs argue that defendant did not comply with the manual is in its failure to place the "stop ahead" sign before the "route junction" sign. Section 2P of the manual states:

"When both a guide sign and a warning sign are necessary at approximately the same location, *the warning sign shall precede the guide sign* and shall be located so as not to obscure the guide sign." (Emphasis added.)

It is clear from the manual that defendant intended that the "stop ahead" warning sign be placed before the "route junction" guide sign since defendant chose the language "shall precede." The word "shall" establishes a mandatory duty, absent a clear and unequivocal intent that it receive a construction other than its ordinary meaning. *Dorrian v. Scioto Conserv. Dist.* (1971), 27 Ohio St.2d 102, 56 O.O.2d 58, 271 N.E.2d 834, paragraph one of the syllabus. Such an interpretation is consistent with the manual itself, which states in Section 1D(1) that "shall" represents a mandatory condition: "Where certain requirements in the design or application of the device are described with the 'shall' stipulation, it is mandatory when an installation is made that these requirements be met." See *Lumbermens Mut. Cas. Co. v. Ohio Dept. of Transp.* (1988), 49 Ohio App.3d 129, 551 N.E.2d 215. We agree with defendant that it may have been an exercise of "engineering judgment" to make the initial decision to install the "stop ahead" warning sign. However, once it elected to do so, defendant was under a duty to comply with the mandatory requirements imposed by its own manual, which it failed to do when it placed the "route junction" sign before the "stop ahead" sign.

Plaintiffs next argue that defendant failed to locate the "stop ahead" warning sign sufficiently in advance of the stop sign as required by the manual in order to allow for adequate deceleration. We must agree with plaintiffs. Table S–1 of the manual sets forth the appropriate advance warning distance required for deceleration. The distances are calculated to allow for a reaction time of three seconds with sign recognition at a distance of one hundred feet. On a highway, such as State Route 590, with a prevailing approach speed of fifty-five m.p.h., an advance warning sign *must* be placed, *at a minimum,* seven hundred fifty feet in advance of a stop sign. Again, compliance with this section of the manual is mandatory as evidenced by the use of the word "shall" in the example included with the table.

In the present case, instead of placing the "stop ahead" warning sign a minimum distance of seven hundred fifty feet in advance of the stop sign at the intersection of State Routes 590 and 105, the warning sign was placed only four hundred sixty feet from the required stop. Defendant argues that the manual must be read as a whole, *in pari materia* with the sections allowing for engineering judgment. Defendant points out that the manual in

effect a few decades before the accident in this case required eleven hundred feet of braking distance, thus evidencing the varying engineering judgment over the years involved in determining the appropriate distances for the placement of such signs. Additionally, the national manual, promulgated by the Federal Highway Administration, in effect at the time of the accident, required an advance warning distance of only four hundred fifty feet. Defendant claims, at the time of trial, it was considering changing its manual to conform to the same standard. However, we are not bound by the national manual, nor by what changes were under consideration by defendant. We note that Section 2M–3 states that "[t]he distance indicated in Table S–1 for proper posting of warning signs may be adjusted where necessary as a function of existing conditions and engineering judgment." This language grants a certain degree of flexibility to defendant in the placement of such signs. However, the *minimum distance* required for a warning sign requiring deceleration is clearly mandatory in nature. Where a manual provision states that signs "shall" be posted at given locations, the qualification "as are necessary" found in R.C. 4511.11 in Section 2M–3 of the manual must be interpreted to mean "as are mandated" pursuant to the manual. See *Tiley v. Baltimore & Ohio RR. Co.* (Oct. 20, 1988), Miami App. No. 88–CA–7, unreported, 1988 WL 110314. This court will not read the general language of Section 2M–3 to make nonmandatory that which is mandatory.

■ Plaintiffs argue that defendant also violated the requirements of the manual in placing the various road signs too close together. We disagree. Section 2E–2, which plaintiffs cite as the violated section, states that "[i]n rural areas two signs for different purposes *should* not be located closer together than 200 feet along the highway." (Emphasis added.) Again we refer to Section 1D of the manual which describes the word "should" as an advisory condition. "Where the word 'should' is used, it is considered to be advisable usage, recommended but not mandatory." Section 1(D)(2). We will not, as a matter of law, impose a mandatory requirement upon defendant where such a duty is not set forth by the manual. While the spacing of signs at two hundred feet may be recommended in order to allow for easier reading for vehicles traveling at higher rates of speed, we will not deprive defendant of those areas of discretion permitted within the realm of exercising its engineering judgment.

■ Plaintiffs also contend that defendant was negligent in inspecting the distance and order of the signs. Section 2M–3 states that "[t]he effectiveness of any warning sign *should* be tested periodically under both day and night conditions." (Emphasis added.) As we stated previously, we will not read the word "should" to find defendant negligent as a matter of law for failure to

perform such tests and inspections more frequently than was apparently done in the present case.

Finally, plaintiffs argue that defendant failed to provide additional warnings to drivers based upon the aforementioned misplacement of signs and the foreseeable distractions located near the intersection. We disagree. While defendant is under a duty to properly place in accordance with its manual those signs which it deems necessary, defendant is not, as a matter of law, required to place additional traffic control devices not mandated by the manual.

While this court has determined that defendant was negligent in failing to comply with the manual in placing the "route junction" sign before the "stop ahead" warning sign and in not placing the "stop ahead" sign sufficiently in advance of the stop sign, we nevertheless must affirm the decision of the trial court and overrule plaintiffs' first assignment of error for the reasons which follow.

In their second assignment of error, plaintiffs claim error in the trial court's conclusion that defendant's negligence was not a proximate cause of the accident. Instead, the trial court found that the proximate cause of the accident was Weinandy's inattentiveness and not any lack of due care on the part of defendant.

As the Supreme Court has held in *Merchants Mut. Ins. Co. v. Baker* (1984), 15 Ohio St.3d 316, 318, 15 OBR 444, 445, 473 N.E.2d 827, 828:

" * * * Negligence *per se* does not equal liability *per se.* Simply because the law may presume negligence from a person's violation of a statute or rule does not mean that the law presumes that such negligence was the proximate cause of the harm inflicted. * * * " See, also, *Hitchens v. Hahn* (1985), 17 Ohio St.3d 212, 214, 17 OBR 447, 448, 478 N.E.2d 797, 799.

Accordingly, while defendant may have been negligent in the placement of its traffic control devices, such a determination does not mandate a finding of liability. Rather, a decision by a trial court which has determined that defendant's acts were not the proximate cause of the resulting injury will not be reversed absent a demonstration that such a determination is not supported by some competent, credible evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

The trial court had before it evidence demonstrating that the stop sign was located exactly at the place mandated by the manual and, furthermore, that the stop sign was in plain view with no obstructions. Several witnesses, including Weinandy, testified that the stop sign itself was visible for at least one thousand feet in advance of the intersection. Based upon the record, we

do not find that the trial court's decision was against the manifest weight of the evidence. Accordingly, plaintiffs' second assignment of error is not well taken and is overruled.

█ Plaintiffs next contend that the trial court improperly granted defendant's motion *in limine* excluding two of plaintiffs' expert witnesses. Although plaintiffs' counsel apparently inadvertently referred to another witness by name, we believe that plaintiffs properly proffered the testimony of witnesses which was excluded in order for this court to review the trial court's decision granting defendant's requested motion *in limine*. *State v. Grubb* (1986), 28 Ohio St.3d 199, 28 OBR 285, 503 N.E.2d 142.

On January 14, 1987, defendant submitted interrogatories to plaintiffs requesting the names of those witnesses plaintiffs expected to call at trial. On April 1, 1987, in their pretrial statement, plaintiffs indicated the names and addresses of witnesses who they believed would testify at trial. Subsequently, on October 30, 1987, plaintiffs sent by ordinary mail their supplement to answers to defendant's interrogatories indicating that there would be two more experts testifying on their behalf. On November 5, 1987, defendant filed its motion *in limine* claiming that due to plaintiffs' failure to notify defendant in a timely fashion of their proposed testimony, deposition of the proposed witnesses could not be reasonably scheduled in advance of trial. Thereafter, defendant apparently made several attempts to depose plaintiffs' experts and was informed that deposition would not be possible until ten calendar days before trial for one of the excluded experts and six days before trial for the other. On November 20, 1987, the trial court granted defendant's motion *in limine* finding that since the plaintiffs' witnesses would not be made available for deposition until such a short time before trial, the introduction of their testimony would be prejudicial.

In *Jones v. Murphy* (1984), 12 Ohio St.3d 84, 12 OBR 73, 465 N.E.2d 444, the Supreme Court upheld the exclusion of the recently disclosed expert's testimony, stating:

"One of the purposes of the Rules of Civil Procedure is to eliminate surprise. This is accomplished by way of a discovery procedure which mandates a free flow of accessible information between the parties upon request, and which imposes sanctions for failure to timely respond to reasonable inquiries. * * *" *Id.* at 86, 12 OBR at 75, 465 N.E.2d at 446.

Even though this court may have ruled differently on defendant's motion *in limine,* we do not find that the trial court abused its discretion in granting the motion since defendant would not have had a reasonable opportunity to depose plaintiffs' witnesses prior to trial. As recognized by the Supreme Court, an abuse of discretion means more than an error of law or of judgment;

it implies that the court's attitude is unreasonable, arbitrary or unconscionable. See *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 19 OBR 123, 482 N.E.2d 1248. Accordingly, plaintiffs' third assignment of error is not well taken and is overruled.

■ In their fourth assignment of error, plaintiffs argue that the trial court improperly disallowed testimony of several experts. Plaintiffs also claim error in the trial court's refusal to allow lay opinion testimony under Evid.R. 701. We recognize at the outset that the trial court has broad discretion regarding the admissibility of expert evidence. See Evid.R. 104(A). As stated previously, an abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Steiner v. Custer* (1940), 137 Ohio St. 448, 19 O.O. 148, 31 N.E.2d 855; *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

Plaintiffs first contend that the trial court did not allow expert witness Robert Yordy to testify regarding the proper placement of the "stop ahead" warning sign on the day of the accident. Yordy did testify, however, that the "stop ahead" warning sign was not placed in compliance with the manual, which requires that it be placed seven hundred fifty feet in advance of the stop sign. Yordy further testified with regard to the placement of the signs as follows:

"I believe they are too close together. And in addition to that, I believe the warning sign should be what comes first rather than the junction sign. As we approach the junction of 105 in this incident the junction sign is clearly shown to be first in view to the motorist and then the stop ahead second. I would, in my opinion, I would turn those around and then I would space them out further. There is [*sic*] too many things to comprehend and to read at a speed of 81 feet per second at 55 miles an hour in this area of just a couple hundred feet."

Thus, we find that Yordy had adequately testified in this regard.

■ Plaintiffs next argue that the trial court erred in not permitting Joseph Fenten to testify as to whether or not he agreed with the prior expert testimony of Chester Wyraz that proper placement of the warning sign was south of the bridge, a distance of approximately nine hundred feet in advance of the stop sign. However, even assuming error, we find no prejudice to plaintiffs by the trial court's decision excluding testimony which has the tendency to be cumulative in effect. Such testimony had been elicited from Wyraz on cross-examination and was therefore already before the trial court for its consideration.

The third instance in which plaintiffs contend that error exists was the trial court's ruling sustaining an objection to the following question:

"Mr. Wyraz, would it have been helpful to you as the district traffic engineer out there at Bowling Green in June of 1983 to have had Mr. Schneieerbauer or Mr. Fenten or somebody a year or once every two or three years check the location of signs for a [*sic*] proper measurements to help get that information into your office?"

We do not agree with plaintiffs that the trial court's decision was erroneous since the issue which plaintiffs are attempting to establish is whether defendant was negligent in failing to inspect the locations of its signs. As we have stated previously, Section 2M–3 does not require a finding of negligence *per se* for a failure to periodically inspect the positioning of warning signs. Rather, the issue of negligence, in this regard, is properly left to the trier of fact, which in this case already had before it the language of the manual itself and testimony by Wyraz and Fenten regarding defendant's lack of recent inspection of this intersection. Therefore, we find no prejudice to plaintiffs in the trial court's decision.

 Plaintiffs argue that the trial court erred in not allowing Yordy to testify as to proximate cause. The transcript reveals the following:

"Q. Thank you, sir. Now, Mr. Yordy, I'd like you to assume that as Mr. Weinandy approached the bridge on 590 and got on the bridge and started proceeding over the bridge on July 2nd of 1983 that he watched Mr. Lipstraw's vehicle, which was stopped at the intersection 590 and 105 north at the intersection with his left turn signal on. And that the vehicles were at that location. Do you have an opinion based upon a reasonable degree of certainty as to whether or not the stop ahead warning sign contributed to Mr. Weinandy going through the stop sign?

"MR. McDONALD: Objection, your Honor. Reaching the point of opinion is speculating in this area.

"MR. HEUCK: I would think that's proper. Let me make one proffer, if it's sustained. We believe Mr. Yordy would testify that the short stop ahead of warning sign and the three signs crossing together each contributed to Mr. Weinandy going through the stop sign on July 2nd, 1983 and were a direct cause of the accident.

"THE COURT: We are near recess time, do you have just a few questions?

"MR. HEUCK: Thank you, your Honor, that's all I have on direct.

"THE COURT: Let's take a recess at this time and return at ten minutes until 11."

It appears from the record that the trial court failed to rule on defendant's objection. Instead, it appears that plaintiffs made an assumption that defendant's motion was sustained. As recognized by the court in *Solon v. Solon Baptist Temple* (1982), 8 Ohio App.3d 347, 8 OBR 458, 457 N.E.2d 858, at paragraph two of the syllabus: " * * * Where the court fails to rule on an objection or motion, it will be presumed that the court overruled the objection or motion." Cf. *Kane v. Ford Motor Co.* (1984), 17 Ohio App.3d 111, 17 OBR 173, 477 N.E.2d 662. Absent a ruling sustaining defendant's objection, plaintiffs could have requested that the witness answer the question and by failing to do so we find no error by the trial court. However, even if the trial court had sustained defendant's motion, we would find no error since the question appears to be requesting a speculative response.

Finally, plaintiffs contend that the trial court erred in not allowing lay opinion testimony of Louis Wirebaugh. Evid.R. 701 provides that the opinion of a nonexpert is admissible if such an opinion is "(1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue." Plaintiffs sought to have Wirebaugh testify, based on his living near the intersection, whether there should be additional warnings located near the intersection. Plaintiffs' proffer indicated that Wirebaugh would suggest that "rumble strips" be placed on the road to warn approaching drivers. We find that the trial court, acting within its discretion, could properly have determined that such testimony should more properly be confined to expert opinion. We find no abuse of discretion by the trial court in this regard and therefore plaintiffs' fourth assignment of error is not well taken and is overruled.

Finally, under their fifth assignment of error, plaintiffs claim error in restricting the testimony of Robert Paule to incidents which occurred within approximately two years of the accident. Plaintiffs also allege that the trial court erred in granting defendant's motion to quash prior accident information regarding the intersection which had been accumulated for federal programs.

We find no abuse of discretion by the trial court in limiting testimony to a recent time frame of two years. Plaintiffs argue that if testimony regarding the intersection from the late 1960s and early 1970s would have been permitted, it would have demonstrated that defendant had notice of the hazardous condition of the intersection. However, we find that a two-year time frame could properly have been determined by the trial court to be more relevant to the accident in the present case and would permit the trier of fact to reach the same conclusion regarding the issue of notice.

We next address the trial court's decision granting defendant's motion to prohibit at trial the admission of evidence of any accidents which came to the attention of defendant solely as a result of its programs operated pursuant to a federal hazard elimination program. Section 152, Title 23, U.S.Code provides in pertinent part:

"(a) Each State shall conduct and systematically maintain an engineering survey of all public roads to identify hazardous locations, sections, and elements, including roadside obstacles and unmarked or poorly marked roads, which may constitute a danger to motorists and pedestrians, assign priorities for the correction of such locations, sections, and elements, and establish and implement a schedule of projects for their improvement."

Defendant argued that the information collected as a result of the federal program could not be introduced at trial on the basis of Section 409, Title 23, U.S.Code, which provides:

*"Notwithstanding any other provision of law,* reports, surveys, schedules, lists, or data compiled for the purpose of identifying[,] evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 152 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be admitted into evidence in Federal or State court or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data." (Emphasis added.)

The statute is clear in that it specifically excludes admission at trial of "reports, surveys, schedules, lists, or data compiled" pursuant to Section 152, Title 23, U.S.Code. The apparent purpose of this provision is to foster the free flow of safety-related information by precluding the possibility that such information later would be admissible in civil suits. The interest to be served by such legislation is to obtain information with regard to the safety of roadways free from the fear of future tort actions.

It is well established that the Supremacy Clause, Clause 2, Article VI, United States Constitution, invalidates state laws that either "interfere with, or are contrary to" federal law. *Gibbons v. Ogden* (1824), 9 Wheat. 1, 211, 6 L.Ed. 23. One manner in which Congress can preempt state law is to do so in express terms. *Jones v. Rath Packing Co.* (1977), 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604, 613. Section 409, Title 23, U.S.Code begins with the language "[n]otwithstanding any other provision of law. * * *" Thus, we find the mandate of Section 409 to have been expressly intended to preempt conflicting federal or state law.

Having determined that reports, surveys, schedules, lists, or data compiled pursuant to Section 152, Title 23, U.S.Code are to be excluded at trial, we must next determine whether its prohibition may be retrospectively applied to the present case. Section 409 was added to Title 23 in 1987 by Pub.L. No. 100–17, 101 Stat. 170. The accident which gives rise to plaintiffs' lawsuits occurred in 1983 and plaintiffs commenced legal action against defendant in 1985.

Initially, we must determine whether Section 409 is substantive or procedural in nature. When a change in law is substantive, the United States Supreme Court has held that the legislation must be treated prospectively unless Congress has stated otherwise. See *Bennett v. New Jersey* (1985), 470 U.S. 632, 638, 105 S.Ct. 1555, 1559, 84 L.Ed.2d 572, 578 ("changes in substantive requirements for federal grants [under Title I of the Elementary and Secondary Education Act, Section 2701 *et seq.*, Title 20, U.S.Code] should not be presumed to operate retroactively.") However, when the legislative change is merely procedural, such change is to be given retroactive treatment, absent a contrary legislative mandate, or if doing so would result in manifest injustice. *Bradley v. School Bd. of City of Richmond* (1974), 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476, 488. In addition, it is important to point out that under federal law a presumption of retroactivity exists. *Id.*

In the present case, Congress has not indicated that Section 409, Title 23, U.S.Code receive only prospective application. Therefore, this court presumes that Section 409 was intended to apply retrospectively unless this would cause manifest injustice. We believe that such a presumption is appropriate since we find that the limitation on the admission of certain evidence at trial imposed by Section 409 is a procedural change. While plaintiffs may not be permitted to introduce certain evidence at trial, they are not deprived of their cause of action against defendant. Nor are plaintiffs, without the use of such evidence, now unable to prove defendant's knowledge as to the improper placement of traffic control devices as set forth in its manual. We therefore conclude that no "manifest injustice" will result from the retrospective application of Section 409. We find our decision to be in accordance with the only reported decision addressing the mandate of Section 409, Title 23, U.S.Code. See *Martinolich v. Southern Pacific Transp.* (La.App.1988), 532 So.2d 435, writ denied (1989), 535 So.2d 745. Accordingly, plaintiffs' fifth assignment of error is not well taken and is overruled.

In light of the foregoing, plaintiffs' assignments of error are without merit and are overruled. The judgments of the trial court are hereby affirmed.

*Judgments affirmed.*

MARTIN, J., concurs.

BRYANT, J., dissents.

JOHN D. MARTIN, J., of the Fairfield County Court of Common Pleas, sitting by assignment.

PEGGY BRYANT, Judge, dissenting.

Being unable to agree with the majority, I must respectfully dissent. Initially, I cannot agree with the majority's discussion of proximate cause. The trial court's decision mentioned proximate cause only in the following paragraph:

"The court concludes that ODOT's placement of the signs, with an unobstructed view to the reasonable driver exercising ordinary care, met or exceeded its duty to make the highways reasonably safe. The court is of the opinion that the proximate cause of the accident was Weinandy's inattentiveness and not any lack of due care on the part of defendant."

In so doing, the trial court seems to indicate that, because defendant "met or exceeded it's [*sic*] duty," defendant's actions could not have been the proximate cause of the accident. In other words, the trial court based its proximate cause determination on an assumption that defendant was not negligent. Given the majority's finding that defendant was negligent *per se,* the basis for the trial court's proximate cause determination is removed. Consequently, I would sustain plaintiffs' second assignment of error to the extent that I would remand for a determination of whether defendant's negligence was a proximate cause of plaintiffs' injuries.

My second disagreement with the majority opinion is on the motion *in limine* issue. The trial court granted defendant's motion because two of plaintiffs' expert witnesses were not made available for deposition until a few days before trial. Pursuant to Civ.R. 37(B)(2)(b), a trial court may impose the sanction of prohibiting a party from introducing evidence if the party has violated a discovery order or if the party's conduct fell within the categories enumerated in Civ.R. 37(D). *Dafco, Inc. v. Reynolds* (1983), 9 Ohio App.3d 4, 5, 9 OBR 4, 5, 457 N.E.2d 916, 917. In the present case, the record does not reveal that plaintiffs violated a discovery order by not making the witnesses available. Moreover, unlike the party in *Jones v. Murphy* (1984), 12 Ohio St.3d 84, 12 OBR 73, 465 N.E.2d 444, cited by the majority, plaintiffs' conduct did not fall under Civ.R. 37(D). Consequently, I find no basis for excluding the expert witnesses' testimony.

While I do not condone the disclosure of additional witnesses only days before trial, nothing in the record suggests that plaintiffs acted in bad faith in the timing of their disclosures or that defendant was prejudiced by the presentation of unanticipated theories of evidence. To the extent defendant

contends it lacked sufficient opportunity to discover the substance of those witnesses' proposed testimony, less severe means exist to meet defendant's concerns without entirely eliminating the witnesses' testimony. I would therefore sustain plaintiffs' third assignment of error.

Finally, as to plaintiffs' argument that the trial court erred in refusing to allow witness Yordy to testify as to proximate cause, I concur with the majority on the basis that the record does not indicate that the trial court sustained defendant's objection to Yordy's testimony.