As I am unable to agree with the majority's disposition of the second assignment of error with regard to the trial court's exclusion of Dr. Stanton-Hicks, I respectfully dissent.
As noted by the majority, it is within the trial court's discretion to determine the particular sanction to be imposed for a discovery infraction. Billman v. Hirth (1996), 115 Ohio App.3d 615,619, citing Russo v. Goodyear Tire Rubber Co. (1987),36 Ohio App.3d 175, 178. Quoting Russo, this court noted in Billman:
 "* * * The appropriateness of the choice is reviewable to the extent that an abuse may have occurred in the exercise of the trial court's discretion in the selection of the sanction. Thus, the trial court must consider the posture of the case and what efforts, if any, preceded the noncompliance and then balance the severity of the violation against the degree of possible sanctions, selecting that sanction which is most appropriate.
 "In deciding, the trial court should look to several factors: the history of the case; all the facts and circumstances surrounding the noncompliance, including the number of opportunities and the length of time within which the faulting party had to comply with the discovery or the order to comply; what efforts, if any, were made to comply; the ability or inability of the faulting party to comply; and such other factors as may be appropriate." [Id. at 619.]
In the instant case, plaintiff did not acknowledge defendants' requests to set deposition dates in January, while trial was still six months away. The following month, plaintiff neither opposed nor even responded to defendants' motion to compel. In the two-month period during which the motion was pending, it appears that plaintiff made no effort to accommodate defendants' requests. After the trial court granted the motion to compel, directed plaintiff to provide three dates for deposition between April 29 and May 21, 1999, and expressly warned plaintiff that failure to comply with the order would result in exclusion of the witness, plaintiff still took no overt action to comply or excuse noncompliance with the order, other than to inform the court and the parties that Dr. Stanton-Hicks would be unavailable to testify until June 12, 1999. However, plaintiff's assertion regarding Dr. Stanton-Hicks's unavailability for deposition was later contradicted by Dr. Stanton-Hicks's own affidavit.
Despite plaintiff's failure to comply with the court's April 29, 1999 order, the trial court did not immediately exclude Dr. Stanton-Hicks's testimony. Rather, the trial court allowed plaintiff another opportunity to make his expert available for deposition prior to trial. On June 7, 1999, the court directed plaintiff to provide a minimum of two dates prior to trial on which Dr. Stanton-Hicks would be available for deposition. Plaintiff failed to comply with this order, submitting only one date prior to trial on which his expert would be available for telephone deposition. Based upon plaintiff's failure to comply with its second discovery order, the trial court granted defendants' motion to exclude the testimony of Dr. Stanton-Hicks.
Plaintiff contends that any delays in producing Dr. Stanton-Hicks for deposition were not the result of bad faith on plaintiff's part, but resulted from Dr. Stanton-Hicks's lack of cooperation. Initially, we note that there is no requirement that a court find that a party acted in bad faith in the discovery process in order to justify exclusion of an expert witness. InHuffman v. Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83, the Ohio Supreme Court upheld the trial court's decision to exclude the testimony of an expert witness, stating:
 We recognize that both Jones and Paugh Farmer
involved instances of willful noncompliance. However, the existence and effect of prejudice resulting from noncompliance with the disclosure rules is of primary concern, not just the intent or motive involved. Appellees' conduct may well have been produced by neglect, a change in defense strategy or an inadvertent error. Nevertheless, the trial court recognized it as a breach of duty giving rise to unfair surprise and concluded that the resulting prejudice could best be remedied by exclusion of the evidence. [Id. at 85; footnotes omitted.]
Further, plaintiff's arguments regarding moral culpability miss the mark. Dr. Stanton-Hicks was plaintiff's witness. Whether plaintiff unreasonably delayed the deposition of Dr. Stanton-Hicks or whether Dr. Stanton-Hicks refused to cooperate, the net result was that as of the time the court orally excluded the testimony of plaintiff's expert, defendants were only ten days from trial without ever having had the opportunity to depose him. Where a defendant does not have a reasonable opportunity to depose plaintiff's expert prior to trial, it is appropriate to exclude that expert from testifying. Perkins v.Ohio Dept. of Transp. (1989), 65 Ohio App.3d 487. In Perkins,
the plaintiffs advised the defendants that plaintiffs' expert would not be available for a deposition until ten days before trial. The trial court granted defendants' motion in limine "* * * finding that since the plaintiffs' witnesses would not be made available for a deposition until such a short time before trial, the introduction of their testimony would be prejudicial." Id. at 496. On appeal, the appellate court affirmed the trial court's decision, finding no abuse of discretion.
In short, given the history of this case, the facts and circumstances surrounding plaintiff's noncompliance, including the length of time within which plaintiff had to comply and plaintiff's inability to comply with two separate discovery orders, I cannot find that the trial court abused its discretion in excluding the testimony of expert witness Dr. Stanton-Hicks as a sanction for failure to comply with the court's discovery order to produce him for deposition.[4]
Furthermore, for the reasons that follow, I would overrule plaintiff's remaining assignments of error.
By his first assignment of error, plaintiff contends that the trial court erred in refusing to grant his May 7, 1999 motion for continuance. It is well-settled that a decision to grant or deny a continuance rests within the sound discretion of the trial court. State v. Powell (1990), 49 Ohio St.3d 255, 259.
In determining whether a court has abused its discretion in granting or denying a motion for a continuance, the Supreme Court of Ohio has refrained from adopting a mechanical test.State v. Sowders (1983), 4 Ohio St.3d 143, 144. Rather, the court has held that the trial court's decision depends upon the circumstances of each case "`particularly * * * the reasons presented to the trial judge at the time the request is denied.'"Powell, supra, quoting Ungar v. Sarafite (1964), 376 U.S. 575,589. To assist the trial court in its endeavor, the Ohio Supreme Court has suggested several factors for consideration:
 * * * [T]he length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case. * * * [State v. Unger (1981), 67 Ohio St.2d 65, 67-68.]
It is my view that the trial court properly exercised its discretion in denying plaintiff's requested continuance. With no transcript of the May 26, 1999 hearing available for review, this court must presume the regularity of the trial court proceedings, Ostrander v. Parker-Fallis (1972), 29 Ohio St.2d 72, and presume that the trial court properly applied the Unger
factors to the existing facts and circumstances.
Further, as noted previously, plaintiff identified Dr. Stanton-Hicks as his expert witness on January 4, 1999. On January 5 and 27, 1999, defendants requested potential dates on which Dr. Stanton-Hicks could be deposed; however, plaintiff's counsel did not acknowledge these requests. Plaintiff's counsel's attempts to excuse this lapse by citing a family emergency that called him out of the office are unpersuasive, as the record indicates that counsel's personal emergency took him away from his professional duties for only three business days in late January.
Thereafter, when no deposition dates had been made available as of February 12, 1999, plaintiff moved the court for an order compelling plaintiff to produce Dr. Stanton-Hicks for deposition. Plaintiff neither opposed the motion nor sought an extension of the discovery cut-off date. The trial court granted the motion on April 29, 1999, ordering plaintiff to provide three alternative dates for deposing Dr. Stanton-Hicks prior to May 21, 1999. Plaintiff did not comply with this order; rather, he filed a motion for continuance on May 7, 1999, arguing that Dr. Stanton-Hicks was out of the country and unavailable for deposition until June 12, 1999. Plaintiff did not accompany his motion with a memorandum in support, nor did he attach any evidentiary materials verifying his contention that Dr. Stanton-Hicks would be unavailable to testify until June 12, 1999. Indeed, Dr. Stanton-Hicks's June 14, 1999 affidavit makes it clear that he was out of the country only from May 20, 1999 to June 5, 1999. Further, neither Dr. Stanton-Hicks's nor plaintiff's counsel's affidavits offer any justification for plaintiff's failure to produce Dr. Stanton-Hicks for deposition in the remaining time between January 5, 1999 and May 21, 1999. Indeed, plaintiff's counsel's affidavit suggests that his efforts at scheduling Dr. Stanton-Hicks for deposition in the four-plus months prior to the doctor's absence from the country were less than aggressive.
Further, plaintiff's assertion that the request for continuance was engendered by the stay of the proceedings is unpersuasive. In both his brief and at oral argument, plaintiff argued that Dr. Stanton-Hicks was fully prepared to be deposed prior to the imposition of the stay, but was no longer prepared after the stay was lifted because he lost plaintiff's records in the process of moving his office and had also assumed additional administrative responsibilities at the hospital where he was employed. These contentions, however, are unsupported by the record. Neither Dr. Stanton-Hicks nor plaintiff's counsel alluded to these circumstances in their affidavits, nor did plaintiff offer any evidence with his motion for continuance in support of these contentions.
In short, I would find that the trial court did not act unreasonably, arbitrarily or unconscionably under the circumstances of this case and, accordingly, did not abuse its discretion in denying plaintiff's motion for continuance.
By the third assignment of error, plaintiff contends that the trial court erred in dismissing the case based upon plaintiff's failure to prosecute rather than upon plaintiff's failure to comply with discovery orders. Specifically, plaintiff argues that the trial court's exclusion of his sole expert witness's testimony effectively ended plaintiff's case; thus, the trial court should not have required the parties to proceed to trial and erred in dismissing the action for failure to prosecute based upon plaintiff's failure to appear at trial. According to plaintiff, the trial court was under a duty to dismiss the case,sua sponte, as a sanction for plaintiff's failure to comply with its discovery orders pursuant to Civ.R. 37(B)(2)(c) and Civ.R. 41(B)(1). Plaintiff maintains that requiring him to present his medical malpractice case, after excluding all expert testimony and refusing to dismiss the case, constituted both an abuse of discretion and an error of law.
The record does not support plaintiff's contention that he orally requested a Civ.R. 37(B)(2)(c) dismissal at the June 18, 1999 pretrial hearing on defendants' motions in limine. A review of the transcript of the June 18, 1999 proceeding fails to reveal any such request by plaintiff. Moreover, had plaintiff appeared at trial on June 28, 1999, and requested such a dismissal, it is entirely possible that the trial court may have granted such a request. When plaintiff failed to appear at trial, however, he was foreclosed from making such a request. Further, plaintiff's motion requesting a Civ.R. 37(B)(2)(c) dismissal was filed on July 6, 1999, eight days after trial and four days after the judgment entry dismissing the case for failure to prosecute was filed. Accordingly, plaintiff's motion requesting such relief was moot upon filing.
Moreover, plaintiff cites no authority for the proposition that a trial court must, as a matter of law, dismiss a case under Civ.R. 37(B)(2)(c) and/or Civ.R. 41(B)(1) after exclusion of a plaintiff's expert witness in a medical malpractice case for failure to comply with discovery orders. Although both Civ.R. 37(B)(2)(c) and 41(B)(1) permit dismissal of an action for failure to comply with court orders, neither rule states that dismissal is required. In short, the trial court's decision not to dismiss the case after the June 18, 1999 pretrial conference and to proceed with the scheduled trial was well within its discretion.
Plaintiff's fourth assignment of error takes issue with the trial court's decision to dismiss plaintiff's action for want of prosecution. A decision to dismiss a case with prejudice for lack of prosecution lies within the sound discretion of the trial court. Pembaur v. Leis (1982), 1 Ohio St.3d 89. In Pembaur, the Ohio Supreme Court held at the syllabus:
 Pursuant to Civ.R. 41(B)(1), it is not an abuse of discretion for the trial court to dismiss an action, with prejudice, for lack of prosecution when a plaintiff voluntarily fails to appear at a hearing, without explanation, when the court has directed him to be present and his location is unknown.
In the instant case, the trial court dismissed the action for failure to prosecute after plaintiff and his counsel failed to appear for trial on June 28, 1999. After excluding Dr. Stanton-Hicks's testimony at the June 18, 1999 pretrial conference, the court reiterated before all counsel that trial would proceed in ten days. Indeed, plaintiff acknowledges that fact in his brief. Despite knowing that trial would proceed as scheduled, however, neither plaintiff nor his counsel appeared. As justification for his absence, plaintiff explains that "it was evident to [plaintiff] that trial would be a vain act, unnecessarily taxing his own resources and judicial economy." Plaintiff's brief at 19.
Plaintiff's reliance on the "doctrine of vain acts" as an explanation for his willful failure to appear at trial is misplaced. A careful reading of the case plaintiff cites in support of this argument, Gates Mills Investment Co. v. Village ofPepper Pike (1978), 59 Ohio App.2d 155, does not justify his position. Under this limited procedural rule of administrative law, a party's failure to exhaust administrative remedies is not an effective affirmative defense if:
 * * * seeking of an administrative remedy would be a vain act, where the administrative agency does not have authority to grant the relief requested. * * *
 A vain act is defined in the context of lack of authority to grant administrative relief and not in the sense of lack of probability that the application for administrative relief will be granted. [Id. at 167.]
 Gates Mills is simply inapplicable to the case at bar. There is no failure to exhaust administrative remedies at issue in this case. Furthermore, there is nothing to indicate that the trial court lacked the lawful authority to conduct the trial of this matter. The fact that plaintiff anticipated that defendants would prevail at trial does not excuse his failure to appear.
There is no indication in the record that plaintiff provided any notice whatsoever to either the court or opposing counsel that he would not appear at the June 28, 1999 trial. Indeed, the trial court acknowledged as much, stating:
 * * * I had a phone conversation that was, I guess, all parties were on the phone dealing with how to proceed today. And it was my understanding somebody can correct me if I'm wrong that I was under the impression that everybody was going to be here this morning because we hadn't resolved any matters. And plaintiffs' counsel told my staff attorney that he actually called him this morning he's still in Canton and my staff attorney told him that he was under the impression that everybody was supposed to be here this morning because nothing was resolved how we were going to proceed. And I never told plaintiffs' counsel that they shouldn't be here. [June 28, 1999 Tr. at 15.]
Although plaintiff filed a motion to stay the proceedings four days before the commencement of trial, that motion was still pending at the time of trial and was not overruled until the morning of trial. Under the circumstances, the trial court was well within its discretion to dismiss plaintiff's claims with prejudice for failure to prosecute.
By his fifth assignment of error, plaintiff argues that the trial court erred in granting defendants' motion to correct the record nunc pro tunc without giving plaintiff time to respond and without setting the motion for either oral or non-oral hearing as required by Franklin County Common Pleas Court Loc.R. 21.01 ("Loc.R. 21.01"). Loc.R. 21.01 provides:
 All motions shall be accompanied by a brief stating the grounds and citing the authorities relied upon. The opposing counsel or a party shall serve any answer brief on or before the 14th day after the date of service as set forth on the certificate of service attached to the served copy of the motion. * * * On the 28th day after the motion is filed, the motion shall be deemed submitted to the Trial Judge. Oral hearings on motions are not permitted except upon leave of the Trial Judge upon written request by a party. The time and length of any oral hearing shall be fixed by the Trial Judge. Except as otherwise provided, this Rule shall apply to all motions.
Loc.R. 21.01 expressly applies to all motions "[e]xcept as otherwise provided." Thus, Loc.R. 21.01 applies only in the absence of a contrary provision and does not supercede any other rule of civil procedure.
A court's inherent power to correct clerical errors nuncpro nunc is codified in Civ.R. 60(A), which provides, in pertinent part:
 Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders. * * * [Emphasis added.]
In the instant case, the court's nunc pro tunc order was entered to correct a clerical error made in the order of filing the entry excluding plaintiff's expert witness and the entry dismissing plaintiff's action. While the trial court could have provided notice to plaintiff of its intention to correct the record prior to the filing of the nunc pro tunc entry, it was under no obligation to do so pursuant to Civ.R. 60(A). That being the case, plaintiff was clearly not entitled to fourteen days in which to formulate a response in opposition.
In Yatsko v. Yatsko (July 29, 1998), Medina App. No. 2681-M, unreported, the Ninth District Court of Appeals rejected a similar challenge on similar procedural facts. In Yatsko, the trial court, as the result of clerical error, issued an agreed judgment entry that did not conform to the stipulated agreement of record. The plaintiffs moved the court to modify the agreed judgment entry nunc pro tunc. The trial court granted the motion, amending the order nunc pro tunc three days later. The defendants claimed on appeal that they were "prejudiced by the entry of the nunc pro tunc order, because they were not afforded proper notice or given an opportunity to respond in opposition." Id. Citing the express language of Civ.R. 60(A), however, the court rejected defendants' contention:
 Clearly, the rule for the correction of clerical errors does not require any notice be given to the parties unless the court should so order it. The Court did not err, then, in granting the motion to enter the nunc pro tunc order without affording defendants-appellants notice or an opportunity to be heard. [Id.]
The Sixth District Court of Appeals reached the same conclusion in Tidwell v. Clark (June 5, 1981), Lucas App. No. L-80-340, unreported. In Tidwell, the trial court, sua sponte,
entered a nunc pro nunc order clarifying that its earlier dismissal of a now re-filed action had been without prejudice. The appellant filed a motion to vacate the nunc pro tunc entry. The trial court denied the motion. On appeal, the appellant argued that the trial court committed reversible error both by refusing to vacate the nunc pro tunc order and by denying plaintiff's request for a hearing on the issue. Citing Civ.R. 60(A), the appellate court upheld the trial court's sua sponte
correction of the record nunc pro tunc without affording either notice or a hearing. "Curiously, neither party has cited or discussed Civ.R. 60(A) which we find dispositive of the case. * * * The language of the rule is clear and unambiguous." [Id.]
As noted previously, plaintiff's only support for his argument is that Loc.R. 21.01 typically provides for a fourteen-day reply period within the standard motion cycle. Loc.R. 21.01 expressly disclaims, however, that it applies to all motions "except as otherwise provided." As noted by the Yatsko
and Tidwell courts, however, Civ.R. 60(A) carves out an exception to this general rule, directing instead that the court may grantnunc pro tunc corrections of the record after such notice, "if any," that it chooses to provide. Accordingly, the trial court did not err in granting defendants' motion to correct the recordnunc pro tunc without affording plaintiff an opportunity to be heard in opposition.
By the sixth assignment of error, plaintiff contends that the trial court abused its discretion in entering the nuncpro tunc order correcting the record to reflect its intention to exclude Dr. Stanton-Hicks's expert witness testimony as of July 2, 1999 at 12:00 p.m. rather than as of June 18, 1999, the date the court orally ruled that Dr. Stanton-Hicks's testimony would be excluded. Plaintiff postulates that the court withheld journalization of its decision to exclude Dr. Stanton-Hicks's testimony in order to either: (1) improperly entice plaintiff into wasting his time, effort and money in preparing Dr. Stanton-Hicks for trial, or (2) circumvent plaintiff's interlocutory appeal. Plaintiff concedes, however, that "[t]here is no evidence to support this conclusion in the record or in the transcript of proceedings." Plaintiff's brief at 5.
Although the court announced its decision to exclude Dr. Stanton-Hicks's testimony at the pretrial conference on June 18, 1999, that announcement had no legal effect until it was reduced to judgment entry and filed with the clerk of courts. See Stateex rel. Indus. Comm. v. Day (1940), 136 Ohio St. 477, paragraphs one and two of the syllabus. It is well-settled that "'[a] court of record speaks only through its journal and not by oral pronouncement * * *.'" Atkinson v. Grumman Ohio Corp. (1988),37 Ohio St.3d 80, 83, quoting Schenley v. Kauth (1953), 160 Ohio St. 109, paragraph one of the syllabus. The purpose of the rule is to allow a court latitude to "change [its] mind between the time of announcing a decision and the filing of a judgment entry."Atkinson, supra.
I find no abuse of discretion in the trial court's decision to reserve its oral evidentiary ruling for reconsideration up through the date of trial. Given that the oral ruling had yet to be given legal effect as of the date of trial, had plaintiff appeared on the appointed trial date, the trial court could still have revised its evidentiary ruling and continued the trial or dismissed the case as a discovery sanction, as plaintiff himself later urged. After plaintiff failed to appear for trial, however, the trial court was well within its discretion to journalize its oral evidentiary ruling. The problem in this case arose from the clerical mistake that caused the interlocutory judgment entry to be filed after the case was dismissed. That error was corrected by the trial court nunc protunc and affords plaintiff no basis for reversal or remand now.
In that I would overrule all six of plaintiff's assignments of error, I would affirm the judgments of the Franklin County Court of Common Pleas in all respects.
[4] Indeed, plaintiff appears to acknowledge as much by moving for dismissal of the case as a sanction for his repeated failure to comply with discovery orders. See plaintiff's brief at page 6, and his July 6, 1999 motion to dismiss (arguing that dismissal was an appropriate discovery sanction pursuant to Civ.R. 37[B][2][c]).