532 So.2d 435 (1988)
Nick MARTINOLICH
v.
SOUTHERN PACIFIC TRANSPORTATION COMPANY, et al.
SOUTHERN PACIFIC TRANSPORTATION COMPANY
v.
Nick MARTINOLICH, et al.
Nos. 88 CW 0159, 88 CW 0327.
Court of Appeal of Louisiana, First Circuit.
October 12, 1988.
Writ Denied January 6, 1989.
*436 Risley C. Triche, Triche, Sternfels & Nail, Napoleonville, for plaintiff Nick Martinolich, Inc.
C. Kelly Lightfoot, Hailey, McNamara, Hall, Larmann & Papale, Metairie, for plaintiffs American Mut. Liability Ins. Co. Nick Martinolich, Russell Benoit, III.
John G. Gomila, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendant Southern Pacific Transp. Co.
Patsy Jo McDowell Cooper, Sr. Asst. Gen. Counsel, Baton Rouge, for defendant State of La., Dept. of Transp. and Development.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
SHORTESS, Judge.
These consolidated cases stem from a collision which occurred on November 1, 1980, between a train owned by the Southern Pacific Transportation Company (Southern Pacific) and a sugar cane truck owned by Nick Martinolich and operated by Russell Benoit, his employee. The collision occurred in Lafourche Parish at a point where the Southern Pacific railroad tracks traverse Louisiana Highway 3185.
Southern Pacific filed suit for its damages against Martinolich, Benoit, and American Mutual Insurance Company. These defendants brought a third party demand against the State of Louisiana, Department of Transportation and Development (DOTD). Martinolich also sued Southern Pacific, DOTD, Robert Fiegel, and Daniel Underwood. In that suit Southern Pacific, Fiegel, and Underwood filed a third party demand against DOTD.
As pretrial discovery progressed, respective counsel for Martinolich and Southern Pacific deposed certain DOTD employees. During the course of the deposition of Joseph H. Wax, Deputy Undersecretary for DOTD, Wax was asked if a Mike Morgan would be the individual best able to discuss the Priority Rating System used to determine which crossings were most in need of warning devices. Counsel for DOTD objected to the question, citing 23 U.S.C. § 409 as authority. After some dialogue between counsel, the witness did answer and stated that Morgan would be the individual to answer questions about priority listings. The witness was then asked if Morgan would have had that knowledge in 1979 and 1980. Counsel for DOTD then stated that she would object to any other questions that pertained to a priority list on updating railroad crossings. After additional dialogue between counsel, questioning of Wax continued until he was asked, "Who makes the decision as to whether or not safety devices or additional safety devices, such as lights and the like, are needed at a particular crossing?" Counsel for DOTD again objected, citing 23 U.S.C. § 409. The deposition was terminated. Martinolich and Southern Pacific filed a *437 motion to compel. The trial court denied the motion and ruled that "23 USC Section 409 creates a privilege as to all information collected pursuant to the federal programs covered by this statute."
Counsel then applied for writs of prohibition, certiorari, mandamus, and review to this court. We granted a writ of certiorari and ordered briefs and oral argument because of our concern over the correctness of the trial court's interlocutory finding that 23 U.S.C. § 409 created a privilege as to all information collected pursuant to the federal programs covered by the statute.
Articles 1421 through 1474 of the Code of Civil Procedure govern discovery in the courts of Louisiana. All matter that is relevant and not privileged is discoverable. LSA-C.C.P. art. 1422.
23 U.S.C. § 409 provides:
Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled for the purpose of identifying[,] evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 152 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be admitted into evidence in Federal or State court or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.[1]
The trial court specifically determined that 23 U.S.C. § 409 created a privilege which made all information collected non-discoverable, apparently pursuant to the language of LSA-C.C.P. art. 1422.
We find that the trial court's conclusion that a privilege was created as to "all information gathered pursuant to the federal programs covered by this statute" was clearly wrong because it extends the literal wording of 23 U.S.C. § 409, which enumerates, inter alia, reports, surveys, and data that are compiled for a specific purpose (compliance with either 23 U.S.C. §§ 130, 144, or 152) to "all information gathered" (emphasis ours) pursuant to these programs. The trial court's holding additionally misinterprets the effect that this statute can be allowed to have upon our Code of Civil Procedure.
23 U.S.C. § 409 begins with the language "[n]otwithstanding any other provision of law...." The substance that follows this preface, applicable to both federal and state courts, is the regulation of evidence: "[certain documents] ... shall not be admitted into evidence in Federal or State court or considered for other purposes...." Insofar as this statute applies to the function of state courts conducting their businessit is preemptive.
The United States Constitution provides for preemption. The supremacy clause empowers Congress,[2] within constitutional limitations, to supersede state law. Hillsborough County, Florida v. Automated Medical Laboratories, Inc., 471 U.S. 707, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985). Where, as here, the intrusion is into an area traditionally occupied by the states, Congress' intent to preempt must be clear. Jones v. Rath Packing Co., 430 U.S. 519, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). When the possibility of intrusion into a field traditionally left to the states is perceived, there exists a presumption that the *438 states' laws remain valid. Rath Packing Co., 97 S.Ct. at 1309 ("[W]e start with the assumption that the historic police powers of the states were not to be superseded ... unless that was the clear and manifest purpose of Congress" [citation omitted]); Automated Medical Laboratories, 105 S.Ct. at 2376 (noting the presumption that state regulation of health and safety concerns is not superseded by congressional action.)
A state's regulation of its court system is in our opinion as fundamental a function of its sovereignty as the normal exercise of its police power even in matters concerning the health and safety of its citizens. Congress' intrusion, in this instance, however, is constitutionally permissible because Louisiana's participation in the federal funding scheme is voluntary; because the improvement of state highways with federal funds is in pursuit of "[providing] for the general welfare" as provided in U.S.Const. Art. I, § 8, cl. 1 ("spending power"); because it is clear that participation in the funding program requires acquiescence to the intrusion; and, finally, because the intrusion is related to a valid federal interest (inasmuch as 23 U.S. C.§ 409 encourages participation in a scheme that ensures, by prioritization, deliberative spending of federal funds). South Dakota v. Dole, 483 U.S. 203, 107 S.Ct. 2793, 2796, 97 L.Ed.2d 171 (1987).[3]
Having concluded that 23 U.S.C. § 409 operates to supersede rules governing a fundamental state function,[4] we must now address the extent of the preemption. Clearly Congress has not endeavored, by way of this statute, to occupy the field of Louisiana's evidentiary rules or our Code of Civil Procedure. Where Congressional enactments do not exclude all state legislation in the field, preemption is to the extent of the conflict between them. Rath Packing Company, 97 S.Ct. at 1310. To determine the extent of the conflict, we are directed to consider the relationship between our rules of evidence and procedure, and 23 U.S.C. § 409. Id. Because preemption is not presumed, we construe 23 U.S.C. § 409 restrictively, to intrude only so much as Congress has expressly prescribed. See Rath Packing Co., 97 S.Ct. at 1309. To determine the intent of Congress, we turn to the federal rules of statutory construction. See U.S. v. Lemaire, 826 F.2d 387 (5th Cir.1987). (Holding that the term "final judgment" in 12 U.S.C. § 91 is to be defined according to federal law, notwithstanding that it refers to a judgment in state court); see also Gary v. State of Louisiana, 441 F.Supp. 1121 (E.D.La.1977), aff'd, 622 F.2d 804 (5th Cir.1980), cert. denied, 450 U.S. 994, 101 S.Ct. 1695, 68 L.Ed. 2d 193 (1981). (Holding that although Federal Rule of Civil Procedure 69 provides for execution of judgment according to the "practice or procedure" of the state in which the district court is held, federal, not state, statutory exemptions govern.)
The proscription in 23 U.S.C. § 409 is "shall not be admitted into evidence ... or considered for other purposes...." The meaning of "shall not be admitted into evidence...." is abundantly clear. We need look no further to discern Congress' *439 intent. American Trucking Associations, Inc. v. Interstate Commerce Commission, 659 F.2d 452, 459 (5th Cir.1981).
The meaning of "or considered for other purposes ..." is not clear. There is a presumption that the legislature intended the plain meaning of the words it chose. Louisiana ex rel Guste v. United States, 656 F.Supp. 1310, 1315 (W.D.La.1986). The intended effect of this phrase, however, is not self-evident. The documents made inadmissible by 23 U.S.C. § 409 are not "all information gathered ..." as the trial court held, but rather "reports, surveys, schedules, lists or data compiled...." This enumeration suggests something more than simple factual information that DOTD has gathered. These documents may reflect mental impressions, conclusions, and opinions of DOTD representatives regarding a survey of railroad grade crossings in need of "separation, relocation, or protective devices ...," if compiled in compliance with 23 U.S.C. § 130; or mental impressions, conclusions, and opinions of DOTD representatives regarding "hazardous locations, sections, and elements ... [to be assigned] priorities for the correction of such ... and [for the implementation of] a schedule of projects for their "improvement," if compiled in compliance with 23 U.S.C. § 152. This is similar to the kind of documentary evidence assembled by expert witnesses that is not subject to discovery under Rule 26 of the Federal Rules of Civil Procedure or under our Code of Civil Procedure.[5] Fed.R.Civ.Pro. 26; See also LSA-C.C.P. art. 1424; Louisiana Department of Transportation and Development v. Stumpf, 458 So.2d 448 (La.1984).
The phrase "considered for other purposes...," preceded by language referring to admissibility of evidence, implies a finder of fact. A finder of fact considers testimony and documentary evidence. We believe that the catch-all phrase was meant to include any other trial use of the enumerated documents; that is to say, that for purposes of the finder of fact, the documents prohibited by 23 U.S.C. § 409 do not exist. They may not be referred to by counsel, and they may not be used for impeachment purposes. They are, however, discoverable, if not otherwise prohibited by LSA-C.C.P. art. 1422, which specifically provides that "[i]t is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."[6]
We say this mindful that privileges are the exceptions to and in derogation of the system by which we determine the truth, and cannot be lightly created or expansively construed. United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). We are additionally aware of the fundamental objectives of Louisiana's discovery process and the liberal construction that articles 1421 through 1474 of the Code of Civil Procedure are to be afforded in order to attain these objectives. Hodges v. Southern Farm Bureau Casualty Insurance Company, 433 So.2d 125 (La.1983). The reports, surveys, data, schedules, and lists collected pursuant to 23 U.S.C. §§ 130, 144, and 152, made inadmissible by 23 U.S. C. § 409, are not privileged within the meaning of LSA-C.C.P. art. 1422, and 23 U.S.C. § 409 does not displace our Code of Civil Procedure so as to make them privileged.
Our interpretation of the scope of 23 U.S.C. § 409 is analogous to interpretation by the Eighth Circuit of a Nebraska statute requiring the county coroners to submit a report to the state Department of Motor Vehicles where the driver of a vehicle dies within four hours of a motor vehicle accident. Neb.Rev.Stat. § 39-6, 104.07; Blackledge v. Martin K. Eby Construction Company, Inc., 542 F.2d 474, 475 (8th Cir.1976). The statute required the coroner, *440 in such an instance, to test for and determine the percentage of alcohol in the body of the deceased. Id. A related statute provided that neither the report submitted by the coroner nor any statement contained therein "shall be made available for any purpose in any trial arising out of the accident...." Neb.Rev.Stat. § 39-6, 104.10; Blackledge, 542 F.2d at 476. The court concluded that, in the facts before it, evidence of a motor vehicle accident victim's blood alcohol content was admissible notwithstanding the exclusionary statute because the examination had been made in the "ordinary course of an autopsy ordered by the acting Coroner of Douglas County and not for purposes of any report to be submitted to the Department of Motor Vehicles." Id. We suggest this distinction, by analogy, is appropriate in determining the ambit of 23 U.S.C. § 409.
Finally, we address the retroactive application of 23 U.S.C. § 409. The statute was added to Title 23 by Pub.L. No. 100-17, 100 Stat 170 (1987). The collision occurred in 1980. The suits were filed in 1981 and 1982, respectively.
Bradley v. School Board of Richmond, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), requires retroactive application of a change in the law in the absence of legislative mandate to the contrary or unless such application would cause manifest injustice. LTV Federal Credit Union v. UMIC Government Securities, 704 F.2d 199, 202 (5th Cir.1983); see also Court v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975). There is no congressional mandate that 23 U.S.C. § 409 apply prospectively only. Under the construction we give 23 U.S.C. § 409, private litigants will be deprived of certain evidence but not a cause of action. Cf. California Cartage Company, Inc. v. United States, 802 F.2d 353 (9th Cir.1986) (where retroactive application of a statute deprived litigants of standing to sue). We do not accept the contention that applicants will now be unable to prove DOTD's knowledge of a defective condition, if such is the case. In this regard, the right to introduce these documents into evidence, if it be a right, is not one that has become unconditional such that deprivation of this evidence will work manifest injustice on the litigants. LTV Federal Credit Union, 704 F.2d at 203. Moreover, the value of the right to introduce this evidence at trial is contingent upon a variety of other contingenciesthe outcome of all of which is uncertain. See California Cartage, 802 F.2d at 357. We conclude that manifest injustice will not result from the retroactive application of 23 U.S.C. § 409. See also Anderson v. Anderson, 520 So.2d 1236 (La.App. 5th Cir.), writ denied, 521 So.2d 1187 (La.1988) (citing Bradley, 94 S.Ct. 2006, to support the retroactive application of 10 U.S.C. § 1408, the "Federal Uniformed Services Former Spouse Protection Act," so as to allow state courts to consider military pension benefits when determining property rights between parties to a divorce).
For the reasons set forth above, we give 23 U.S.C. § 409 restrictive interpretation. The documents prohibited by § 409 do not exist for the fact finder, and relators in pursuing pretrial discovery are permitted a scope of discovery limited only by the statutory language of LSA-C.C.P. arts. 1422-1425.
All costs of these applications, amounting to $8,254.75,[7] are taxed to DOTD. Attorney fees for Martinolich's and Southern Pacific's counsel are fixed at $2,000.00 each.
INTERLOCUTORY RULING VACATED, AND WRIT MADE ABSOLUTE.
NOTES
[1] 23 U.S.C. § 130 requires, inter alia, that states participating in funding thereunder survey highways to identify railroad crossings which "require separation, relocation, or protective devices, and establish and implement a schedule of projects for this purpose." 23 U.S.C. § 144, similarly, requires, inter alia, an inventory of all highway bridges "on any Federal-aid system ... [and] assign each a priority for replacement or rehabilitation...." 23 U.S.C. § 152 requires that participating states survey "all public roads to identify hazardous locations ... assign priorities for the correction of such locations ... and implement a schedule of projects for their improvement.
[2] The supremacy clause provides, in pertinent part:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme law of the land...." U.S.Const. Art. VI, cl. 2.
[3] South Dakota v. Dole, 483 U.S. 203, 107 S.Ct. 2793, 2796, 97 L.Ed.2d 171 (1987) addressed conditioned federal funding under Title 23, specifically 23 U.S.C. 158 (the mandatory drinking age requirement) and the constitutional limitation on conditioned funding under the spending clause:

[T]he exercise of the spending power must be in pursuit of "the general welfare...." Second, we have required that if Congress desires to condition the States' receipt of federal funds, it "must do so unambiguously ..., enabl[ing] the States to exercise their choice knowingly, cognizant of the consequences of their participation...." Third, our cases have suggested (without significant elaboration) that conditions on federal grants might be illegitimate if they are unrelated "to the federal interest in particular national projects or programs."
(Citations omitted). 107 S.Ct. at 2796. See also Florida v. Mathews, 526 F.2d 319 (5th Cir.1976) (noting that conditions imposed on voluntary state participation in funding programs does not infringe upon state sovereignty preserved by the tenth amendment).
[4] See Patterson v. New York, 432 U.S. 197, 97 S.Ct. 2319, 2322, 53 L.Ed.2d 281 (1977) (noting the deference to be accorded state procedure in state courts, including matters such as the burden of producing evidence and the burden of persuasion).
[5] Louisiana's rules of discovery are, in fact patterned after and do not substantially differ from the federal rules. Ogea v. Jacobs, 344 So.2d 953, 957 (La.1977).
[6] The documents are inadmissible by operation of 23 U.S.C. § 409; therefore, it is incumbent upon the parties seeking to discover them to show that the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
[7] Costs of suit number 88 CW 0159 are $6,967.69, and costs of suit number 88 CW 0327 are $1,287.06.