863 P.2d 271

SOUTHERN PACIFIC TRANSPORTATION COMPANY, a Delaware corporation, Petitioner,

v.

Hon. Michael A. YARNELL, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent,

Mary E. ISBELL, for and on her own behalf as surviving spouse of Richard Levonne Isbell, and for and on behalf of Dennis Isbell, David Isbell, John Isbell, Marsha Isbell and Joseph Isbell, the surviving children of Richard Levonne Isbell, Real Parties in Interest.

The STATE of Arizona, acting By and Through the ARIZONA DEPARTMENT OF TRANSPORTATION and the Arizona Corporation Commission, Petitioner,

v.

Hon. Michael YARNELL, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,

Mary E. ISBELL, for and on her own behalf as surviving spouse of Richard Levonne Isbell, and for and on behalf of Dennis Isbell, David Isbell, John Isbell, Marsha Isbell and Joseph Isbell, the surviving children of Richard Levonne Isbell, Real Parties in Interest.

Nos. 1 CA–SA 93–0003, 1 CA–SA 93–0004.

Court of Appeals of Arizona, Division 1, Department E.

May 27, 1993.

Reconsideration Denied July 26, 1993.

Review Granted Dec. 15, 1993.*

* Corcoran, J., of the Supreme Court, did not participate in the determination of this matter.

F. Pendleton Gaines, III and Mark H. Brain, Fennemore Craig, P.C., Phoenix, for petitioner Southern Pacific Railroad.

Elliot G. Wolfe and Cora Perez, Begam, Lewis, Marks, Wolfe & Dasse, P.A., Phoenix, for real parties in interest.

Donald O. Loeb, Campana, Vieh & Strohm, P.C., Scottsdale, for Arizona Corp. Comm'n.

## OPINION

LANKFORD, Judge.

In this special action, the petitioner railroad seeks relief from a superior court order compelling the railroad to produce documents which it contends are privileged.

■ We accepted jurisdiction and granted relief by a prior order which directed the respondent court and judge to not compel the disclosure. Our order stated that an opinion would follow, and this is the promised opinion. We have jurisdiction pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") section 12–120.21 and the Rules of Procedure for Special Actions. Special action jurisdiction may properly be exercised in cases involving the assertion of a privilege against discovery orders. *See* Jefferson L. Lankford & Paul Ulrich (eds.), 1 ARIZONA APPELLATE HANDBOOK § 7.2.2 at 7–6 (3d ed. 1992).

The privilege claimed by the railroad rests on a federal statute. That statute, 23 U.S.C. section 409, provides:

Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled for the purpose of identifying[,] evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144 and 152 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be SUBJECT TO DISCOVERY OR admitted into

evidence in a Federal or State court PROCEEDING or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.

The capitalized language was added by amendment in 1991. 23 U.S.C.A. § 409 (West Supp.1993) (effective Dec. 18, 1991).

This discovery dispute arose in a wrongful death action filed by the real parties in interest, the survivors of Richard Isbell. In 1990, a milk truck driven by the decedent collided with a Southern Pacific train at a crossing. The wrongful death claim alleges, among other things, that the crossing signals were inadequate.

Prior to the accident, the Arizona Corporation Commission, which regulates railroads, had designated this crossing for improvement at a later indefinite date by installing automatic gates. Subsequently, Maricopa County applied for authority to install the gates. The Commission granted the authority and issued an order directing the railroad to install the gates when resources were available.[1] However, the automatic crossing gates had not yet been installed when the accident occurred.

The plaintiffs sought discovery from the railroad of information regarding this and other rail crossings in Arizona. By interrogatories and requests for the production of documents, the plaintiffs requested information about delay in installing the automatic gates after the Commission had authorized them, about all other crossing upgrades in the State of Arizona during the same time period, and about Commission action regarding the crossing upgrade. Among other things, plaintiffs sought the following specific information: (1) the dates of field reviews of the crossing; (2) the cost estimates and planning and construction dates for the crossing improvement; (3) written criteria for evaluating crossings for possible automatic gates; and (4) the number and location of crossings for which authority had been issued to install automatic gates, and installation information for each such crossing.

The railroad filed a motion for protective order and the plaintiffs filed a motion to compel discovery. The superior court denied the former motion and granted the latter. In a detailed minute entry order, the court interpreted 23 U.S.C. section 409 as protecting only the "reports, surveys, schedules, lists or data" mentioned in the statute and as exposing to discovery "simple factual information gathered for or contained in such reports or compilations...." "An otherwise discoverable or admissible fact," the court reasoned, "is not made non-discoverable or non-admissible simply by its inclusion in a privileged document or conversation." Consequently, the court ordered that "factual information"—but not reports, other documents, opinions or conclusions—was discoverable.

The disposition of this dispute is determined by the federal statute. Although the plaintiffs have made a state law wrongful death claim, the federal statute overrides Arizona's discovery rules by virtue of the Supremacy Clause. U.S. Const. art. VI, cl. 2. We are bound to follow the federal statute.

The statute protects the information from discovery. The statutory privilege sweeps broadly indeed, but that is the rule Congress enacted. The 1991 amendment to section 409 clarified that not only is the protected data inadmissible in court, but also shall "not be subject to discovery ... or considered for other purposes...." More importantly, Congress broadly defined the scope of protected information as "reports, surveys, schedules, lists, *or data compiled*" in connection with Federal Railroad Safety Act (45 U.S.C. sections 421–447) and Federal Highway Safety Act (23 U.S.C. sections 101–160) programs. (Emphasis added). These federal safety programs include surveys and programs conducted by the states pursuant to federal highway and rail safety mandates. *See* 23 U.S.C. §§ 130(d), 152(a), 402(a); 45 U.S.C.

---

1. This order is not in the record. However, at oral argument the real parties in interest and the railroad agreed that the order did not desig-nate a specific time for installation but rather directed the railroad to install the gates when it had the available resources.

§ 433; 23 C.F.R. Parts 646, 924. Arizona participates in these programs and has specifically delegated rail crossing safety authority to the Corporation Commission. *See* A.R.S. §§ 40–337 to 337.03. The parties in this special action do not disagree that the information sought was related to a federal safety program.

The key to determining the scope of the section 406 privilege is Congress' decision to protect "data." The ordinary meaning of "data" is "facts." When the data has been "compiled," to use the statutory term, it is protected both against discovery and against admission into evidence.

The real parties in interest assert that "data" does not mean facts or raw data, but only means the written documents into which the data has been incorporated. That contention contradicts the plain language used by Congress. As the real parties in interest conceded at oral argument, "We're not reading the statute as it's written."

Any other interpretation would render the statutory privilege illusory. Physical documents which contained data would be protected, but the data itself would not. Any other meaning would also undercut the statutory purpose. Congress apparently intended to protect the process of making rail crossing safety decisions from outside scrutiny and interference.[2] With countless miles of rail lines and highways throughout the United States but only finite resources, improving safety is necessarily an ongoing process. Not every safety measure can be adopted at every rail crossing with a snap of the fingers. Congress thought that decisions seeking to optimize the proper balance between safety and fiscal restraints would be best produced in a system free from intrusive second-guessing by civil tort actions, a system in which candid evaluations of highway safety hazards would flourish and information-gathering would be uninhibited. *Robertson v. Union Pac. R.R. Co.*, 954 F.2d 1433, 1435 (8th Cir.1992) (evaluations); *Perkins v. Ohio Dep't of Transp.*, 65 Ohio App.3d 487, 584 N.E.2d 794, 802 (1989) (information); *Sawyer v. Illinois Cent. Gulf R.R. Co.*, 606 So.2d 1069, 1074 (Miss. 1992) (information).

▮▮▮ The clear weight of authority holds that data as well as documents are protected by the statute. In *Robertson v. Union Pac.*, the court upheld the exclusion[3] of rail crossing safety data, of a newspaper article based on such data, and of expert opinion testimony based on such data. The court held that introduction of data compiled for the purpose of highway and rail crossing safety enhancement was barred by "[t]he plain language of the statute." 954 F.2d at 1435. Moreover, the statute also bars secondary sources—such as the newspaper article—because " '[t]o allow the introduction of the data through the newspaper article would circumvent the purpose of the statute.' " *Id.* (quoting district court). In short, both the documents containing data and the data itself are protected.

The superior court nevertheless rejected *Robertson* as authority because "it is not controlling on Ninth Circuit state trial courts." While *Robertson* is not "controlling" in a strict sense, it is powerfully persuasive. That decision is one of only two United States Court of Appeals decisions on point. The other decision is consistent with *Robertson:* It holds that a witness cannot testify about the contents of documents otherwise protected by the statute, because to allow such testimony "would have circumvented the purposes of the statute." *Harrison v. Burlington N. R.R. Co.*, 965 F.2d 155, 160 (7th Cir.1992).[4] It is of little consequence that these are decisions of the Seventh and Eighth Circuits of the Court of Appeals rather than

---

2. Although the legislative history of section 409 is silent as to Congressional purpose, the courts have ascribed this purpose to Congress. *See Harrison v. Burlington N. R.R. Co.*, 965 F.2d 155, 156 n. 3 (7th Cir.1992).

3. The evidence was excluded from trial. Discoverability of the information was not at issue

because 23 U.S.C. § 409 apparently had not yet been amended to clarify that the data is also not discoverable.

4. The superior court did not cite *Harrison* and was apparently unaware of it.

of the Ninth Circuit. None of these courts has the power to directly review any decisions by Arizona state courts. Thus, none of them can issue "controlling" decisions, at least in the strict sense. No juridical reason warrants rejection of other circuits' opinion simply because the Ninth has not yet spoken.[5] Thus, we are left with two consistent opinions from the penultimate federal court in the land interpreting a federal statute. In our view, this comprises such weighty authority on a federal question that we would be extremely reluctant to disagree with it.[6]

State court decisions are largely consistent with the two federal appellate decisions: The states also interpret the federal privilege expansively. In *Perkins v. Ohio Dep't of Transportation*, for example, the court held that data—"evidence of any accidents which came to the attention of defendant solely as a result of its programs operated pursuant to a federal ... program"—was inadmissible. 584 N.E.2d at 802. In *Sawyer v. Illinois Cent. Gulf R.R. Co.*, 606 So.2d at 1073, the court rejected as "specious" a "literalistic reading of the statute, to exclude the actual documents, but allow witnesses to testify to their contents." *See also Claspill v. Missouri Pacific R.R. Co.*, 793 S.W.2d 139 (Mo.1990) (upholding exclusion of testimony, but not expressly interpreting scope of federal privilege statute).

A single state case, upon which the real parties in interest heavily rely, does not overcome the weight of federal and state authority. In *Martinolich v. Southern Pac. Transp. Co.*, 532 So.2d 435 (La.Ct. App.1988), the court held that the language of the pre-amendment version of section 409 should be read narrowly as preventing only the admission of evidence at trial and not as barring the pretrial discovery of information. The Congressional amendment clarifying that the privilege indeed does bar discovery erased this misconception, and with it the vitality of *Martinolich*.

The real parties in interest nevertheless urge us to restrain the scope of the federal privilege and subject to discovery data developed after the Corporation Commission issued its order authorizing the improvement of this crossing. We find no authority for this proposition and, in view of the broad Congressional language, we are disinclined to restrict the privilege. Moreover, the Congressional purpose is best served by protecting such data. As the real parties in interest acknowledged at oral argument, the Corporation Commission's order to improve this crossing did not designate when improvement was to begin: It stated that the improvement was to be made when the railroad had the available resources. Thus, decisions concerning the installation of the gates were not complete when the commission issued its order. Therefore, the release of information about this particular crossing compiled after the commission's order would still subject the decision making process to scrutiny. In addition, disclosure of information about other crossings generated after the commission issued its order would expose the process to the harsh glare of hindsight. Congress apparently intended to prevent precisely this kind of intrusion.

The real parties in interest also contend that the data is discoverable because it might have been gathered for purposes other than federal safety programs. The record fails to reveal that the data was gathered for other purposes. More importantly, that fact would be immaterial even if it could be proved: The federal statutory language and purpose would still require that the data be privileged. In *Robertson v. Union Pac.*, 954 F.2d at 1435 n. 3, the court held just such an argument to be "without merit."

The real parties in interest next argue that the statute does not protect data pro-

---

5. A different problem would be presented if the Ninth Circuit were to have issued an opinion contrary to other circuits. In such a situation, the weight of authority might conceivably be rejected in the interest of uniformity of law between state and federal courts within the circuit. However, the Ninth Circuit has not opined contrary to *Robertson* and *Harrison*.

6. The superior court also relied on a district court opinion, *Hagerty v. Southern Ry. Co.*, 133 F.R.D. 34 (E.D.Mo.1990). To the extent it conflicts with *Robertson*, *Hagerty* has been implicitly overruled: the federal district court that issued the *Hagerty* opinion is within the Eighth Circuit, and, unlike a state court, is subject to direct review by the circuit court of appeals.

duced prior to the effective date of the 1991 amendment. Prior to that date, they contend, the statute barred admission of the data into evidence at trial but not its pretrial discovery. *See Martinolich,* 532 So.2d at 439.

We reject this contention first because Congress intended all along to protect the data from discovery. The earlier version of the statute barred not only the admission of the data into evidence, but also its consideration "for other purposes." In our opinion, *Martinolich* misinterpreted the statute; the Congressional amendment clarified that the provision already extended the privilege to discovery materials rather than altering the privilege by expanding its scope.

■ Secondly, even if the 1991 amendment extended the scope of the statute, the amendment was retroactive. Federal law considers procedural amendments such as this one to be presumptively retroactive. *Bradley v. School Bd. of City of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). Thus, no matter when the data originated, the 1991 amendment barred its discovery at any time after the effective date of that amendment. *See Perkins v. Ohio Dep't of Transp.,* 584 N.E.2d at 803; *Claspill v. Missouri Pacific R.R. Co.,* 793 S.W.2d at 140 (23 U.S.C. section 409 is retroactive). There is no dispute that the 1991 version was in effect at the time the discovery requests were made in this case. Thus, the statute barred the requested discovery.

The final argument advanced by the real parties in interest is that application of the federal statute to state court actions violates the Tenth Amendment to the United States Constitution, which provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST. amend. X.

■ The protection of the Tenth Amendment is limited to preserving the rights of the states to participate in the national political process; otherwise, the states must rely on that process to preserve their roles and powers. *South Carolina v. Baker,* 485 U.S. 505, 512, 108 S.Ct. 1355, 1361, 99 L.Ed.2d 592 (1988); *Garcia v. San Antonio Metro. Transit Auth.,* 469

U.S. 528, 554, 105 S.Ct. 1005, 1019, 83 L.Ed.2d 1016 (1985). The enactment by Congress of a federal evidentiary and discovery privilege in state court actions for a permissible federal purpose does not deprive the State of Arizona of its ability to participate in the national political process and thus does not run afoul of the Tenth Amendment. *See Claspill v. Missouri Pacific R.R. Co.,* 793 S.W.2d at 140–41 (rejecting Tenth Amendment argument).

The respondent court and judge committed a clear abuse of discretion by failing to follow federal law and by directing the railroad to produce in discovery information that is protected by federal law. Accordingly, we have accepted jurisdiction and granted the relief sought by the railroad.

VOSS, P.J., and GERBER, J., concur.