Darrell Joe KITTS, Plaintiff,

v.

NORFOLK AND WESTERN RAILWAY COMPANY, a corporation, Defendant.

Civ. A. No. 3:92–0004.

United States District Court, S.D. West Virginia, at Huntington.

Dec. 17, 1993.

Gregory M. Tobin, Robert W. Schmieder, Pratt, Jones, Tobin & Hylla, East Alton, IL, David Lycan, Wayne, WV, for plaintiff.

Fred Adkins, Robert L. Massie, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, WV, for Norfolk and Western Ry. Co. and Norfolk Southern Corp.

## MEMORANDUM ORDER

TAYLOR, United States Magistrate Judge.

This action arises out of a crossing collision in Fort Gay, West Virginia on November 30, 1989. Plaintiff, who was driving the automobile involved in the accident, has filed a complaint in which he alleges, *inter alia,* negligence on the part of the Norfolk and Western Railway Company (hereinafter "N & W") in the manner in which it maintained the crossing. There are presently pending before the Court motions [1] seeking protective orders prohibiting noticed depositions of employees of N & W and asking that N & W be relieved of any obligation to produce documents sought in the deposition notices. While a number of objections to the depositions have been raised, defendant relies principally upon the provisions of 23 U.S.C. § 409, arguing that plaintiff, by means of the depositions and document requests, is seeking information which has been accorded privileged status by the statute.

Section 409, enacted in 1987 and, importantly for purposes of this decision, amended in 1991,[2] provides:

Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled for the purpose of identifying evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130,[3] 144,[4] and 152[5] of this title or for the purpose of developing any highway safety

protection of grades at crossings, the reconstruction of existing railroad grade crossing structures, and the relocation of highways to eliminate grade crossings, may be paid from sums apportioned in accordance with section 104 of this title.

In addition, section 130(d) provides:

Each State shall conduct and systematically maintain a survey of all highways to identify those railroad crossings which may require separation, relocation, or protective devices, and establish and implement a schedule of projects for this purpose. At a minimum, such a schedule shall provide signs for all railway-highway crossings.

---

1. Before the Court for decision is the renewed motion for a protective order with regard to noticed depositions of defendant's "Trainmaster" and "Division Engineer" and the motion of the N & W asking that the Court prohibit the noticed deposition of "Personnel of the Claims Department."

2. The 1991 amendment substituted "shall not be subject to discovery or admitted into evidence" for the phrase "shall not be admitted into evidence," making it clear that Congress intended that documents within the purview of section 409 were privileged and not simply inadmissible at trial. Though some courts had concluded that section 409 created a privilege, and thus precluded discovery as well as admission in evidence, the decisions were not uniform. *See, Indiana Department of Transportation v. Overton,* 555 N.E.2d 510, 512 (Ind.App.1990); *Hagerty v. Southern Railway Company,* 133 F.R.D. 34 (E.D.Mo.1990).

3. Section 130 of Title 23 provides for federal funding for grade crossing improvements. Section 130(a) provides, in part, as follows:

Except as provided in subsection (d) of section 120 of this title and subsection (b) of this section, the entire cost of construction of projects for the elimination of hazards of railway-highway crossings, including the separation or

4. Section 144 pertains to highway bridge replacement and rehabilitation programs.

5. Section 152(a) provides, in relevant part:

Each State shall conduct and systematically maintain an engineering survey of all public roads to identify hazardous locations, sections and elements ... which may constitute a danger to motorists and pedestrians, assign priorities for the correction of such locations, sections, and elements, and establish and implement a schedule of projects for their improvement.

construction improvement project which may be implemented utilizing Federal-aid Highway Funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.[6]

■ Collateral issues which require attention include the question of whether the statute and its amendment in 1991 are to be applied retroactively[7] and whether the Court, in interpreting § 409 is to construe its provisions, and the apparent absolute immunity accorded protected information, "liberally." The issue with respect to retroactivity appears easily resolvable. The information and documents contemplated by the provisions of section 409 were, of course, generated in accordance with sections 130 and 152 long before the enactment of section 409, and the decisions[8] addressing the issue of retroactivity have concluded, unanimously insofar as the Court can determine, that the statute is to be applied retroactively. Nothing proffered by plaintiff or perceived by the Court provides any basis for departing from these holdings. Accordingly, retroactive effect will be accorded the statute, and its provisions considered authoritative with respect to the discovery sought in this case.

■ Turning to the issue of construction, the Court takes note of the argument for liberal construction, seemingly supported in cases cited by the N & W. However, an approach to the construction of section 409 which adopts this view simply ignores a mandate, issued often by the Supreme Court, the Court of Appeals for the Fourth Circuit, and all other courts of which I am aware, requiring that privileges, which would clearly include the privilege created by section 409, be strictly construed.

■ This Court's consideration of construction begins with the oft expressed principle that "'the public ... has a right to every man's evidence,' except for those persons protected by a constitutional, common-law, or statutory privilege," *United States v. Nixon*, 418 U.S. 683, 709, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974), *quoting from Branzburg v. Hayes*, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972), and that privileges, whether "established in the Constitution, by statute or at common law," are neither "lightly created nor expansively construed, for they are in derogation of the search for truth." *Id.* at 710, 94 S.Ct. at 3108.[9] The privilege created by section 409, and the construction to be accorded its terms, cannot, of course, be analyzed in isolation, but must be viewed in light of governing principles applicable to all privileges. Some perspective is afforded by examining decisions construing the attorney-client privilege, the oldest and clearly most venerable "of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101

---

6. The "context" of this statute was, perhaps, most aptly described in an opinion by Justice Robertson of the Supreme Court of Mississippi. In *Sawyer v. Illinois Central Gulf Railroad Company*, 606 So.2d 1069, 1073 (Miss.1992), he explained that,

  A number of years ago, the federal government developed a program for enhancing the safety of railroad crossings across the country. The states were encouraged to participate under federal guidelines and upon compliance would receive ninety percent federal funding for such upgrade projects. Federal law and regulation directed the states to survey their circumstances and prepare data on crossings where safety improvements may be needed. To the end that candor might obtain regarding hazards that exist, the Congress acted to protect information developed in connection with the

  program for use in any civil litigation arising out of railroad crossing accidents.

7. Plaintiff seeks information and documents with respect to periods both prior and subsequent to enactment of section 409.

8. *See, Wiedeman v. Dixie Electric Membership Corporation*, 627 So.2d 170, (La. November 29, 1993); *Southern Pacific Transportation Company v. Yarnell*, 176 Ariz. 552, 863 P.2d 271 (App. 1993); *Claspill v. Missouri Pacific Railroad Company*, 793 S.W.2d 139 (Mo.1990); *Perkins v. Ohio Department of Transportation*, 65 Ohio App.3d 487, 584 N.E.2d 794 (1989).

9. Similar sentiments were expressed by the Court when construing a statutory privilege in *Baldrige v. Shapiro*, 455 U.S. 345, 360, 102 S.Ct. 1103, 1112, 71 L.Ed.2d 199 (1982).

S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). This privilege, which clearly occupies a very distinguished place in the pantheon of privileges, is, nevertheless, and in accordance with Wigmore's teachings, "strictly confined within the narrowest possible limits consistent with the logic of its principle." 8 *J. Wigmore, Evidence in Trials at Common Law*, § 2291 at 554 (J. McNaughton Rev.Ed. 1961). The Court of Appeals for the Fourth Circuit, adhering to Wigmore's views and quoting with approval Chief Justice Shaw's admonition [10] that "the privilege of exemption from testifying to the facts actually known to the witness, is in contravention to the general rule of law; it is therefore to be watched with some strictness, and is not to be extended beyond the limits of that principle of policy, upon which it is allowed," has, similarly, concluded that the attorney-client privilege must be strictly construed. *National Labor Relations Board v. Harvey*, 349 F.2d 900, 906 (4th Cir.1965).[11] Viewing section 409 in its proper context—i.e., a statutory privilege which will have the effect of depriving the factfinders of at least some relevant evidence—the proposition that the privilege created by section 409 must be strictly construed appears manifest. Moreover, a strict construction of the statute clearly nullifies the great bulk of defendant's objections and renders discoverable nearly all of the matters encompassed by plaintiff's notices.

Having reviewed the principles governing the manner of construing privileges, the Court would be quick to point out the fact that, apart from these principles of construction, it seems apparent, under the plain wording of the statute, that considerably less protection is accorded the information and documents sought by plaintiff than defendant seems willing to concede.[12] Counsel for plaintiff has suggested that "common sense" be applied in resolving this discovery dispute, and utilization of that attribute, in lieu of principles of construction, does, in the Court's view, provide a viable basis upon which to reach a decision in this case. The statute does, after all, contemplate protection for documents and data prepared or "compiled for *the* purpose" (emphasis added) of safety enhancement.[13] It clearly does not accord protection for documents or data prepared or compiled for some entirely separate and distinct purpose, even if the contents of the same, or parts thereof, eventually become ingredients thrown into a soup kettle with a distinct flavor of safety enhancement. There are, quite clearly, documents and records which have been created by the N & W long before safety enhancement and the provisions of section 409 were a "gleam in the eye" of Congress, and such documents and reports would continue to be generated following repeal or expiration of the statutory provisions involved in this proceeding, if such repeal or expiration were to occur. The

10. *Hatton v. Robinson*, 31 Mass. (14 Pick.) 416, 422 (1833).

11. *See also, United States v. Tedder*, 801 F.2d 1437, 1441 (4th Cir.1986); *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir.1984); *United States v. (Under Seal)*, 748 F.2d 871, 875 (4th Cir.1984); *North Carolina Electric Membership Corporation v. Carolina Power & Light Company*, 110 F.R.D. 511, 513 (M.D.N.C.1986).

12. Although there are a considerable number of decisions, mostly state court decisions, dealing with section 409, most have involved attempts to secure information from governmental authorities—information which was quite clearly prepared or compiled for purposes of safety enhancement. In the only cases involving an attempt to secure discovery directly from the railroad defendant which have come to this Court's attention, *Taylor v. St. Louis Southwestern Railway Company*, 746 F.Supp. 50 (D.Kan.1990) and *Southern Pacific Transportation Company v. Yar-

*nell*, 176 Ariz. 552, 863 P.2d 271 (App.1993), plaintiffs were either seeking to secure governmental documents from the railroad defendant or to depose a railroad employee who had responsibility for public projects involving crossing safety improvement. The N & W, thus, appears to be the only litigant with the chutzpah to argue for extension of section 409's protection to those as remote from responsibility for safety enhancement programs as the employees sought to be deposed here and to information with such a tenuous connection to safety enhancement programs.

13. Decisions support the view, adopted by this Court, that use of protected materials for other purposes does not defeat the protection accorded by section 409. *See, Robertson v. Union Pacific Railroad Company*, 954 F.2d 1433, 1435 n. 3 (8th Cir.1992). This conclusion, however, does not alter the fact that the documents or data must originally have been compiled or prepared "for the purpose of" safety enhancement.

same applies to information gathered by employees of defendant. Nothing contained in the language of section 409 supports the proposition that these reports and documents or this information qualify for the protection accorded elements of a safety enhancement program, nor would common sense or rules of construction support such a proposition. Had Congress contemplated that such reports and information were to be thrown into the safety enhancement pot and accorded protection, it could have spoken to the matter in section 409. That it did not,[14] and that defendant, to support such a proposition, proffers an interpretation which strains credulity, is conclusive with respect to this Court's view of the statute.

With these principles in mind, and taking account of the fact that, at the hearing on the motions, defendant's showings were confined, for the most part, to affidavits framed in conclusory terms,[15] failing, abysmally, to establish that documents or information sought were created or gathered "for the purpose" of safety enhancement, the Court concludes that, with the exception of the documents or computer data in the possession of David Garner—a compilation of information which, as Mr. Garner's affidavit establishes, was compiled for purposes of the safety enhancement program contemplated by section 409—defendant's motions for protective orders, insofar as they rest on the provisions of section 409 must be denied.

Defendant has also asserted entitlement to protection from discovery under the provisions of 45 U.S.C. § 41. While this statutory provision has very clear implications for the admissibility of evidence at trial, this Court concluded a number of years ago in *Vance v. Chesapeake and Ohio Railway Company,* Civil Action No. 82-3417 (Mem. Order entered March 2, 1984), that section 41 does not shield information or documents from discovery. Nothing contained in the decisions since entry of this memorandum order provides any basis for departing from its reasoning, and the Court does not choose to do so in the context of this proceeding.

Plaintiff's revised notices have been carefully drawn, the information sought is relevant and it appears that the notices are addressed to appropriate sources. Apart from the data in the possession of Mr. Garner in Atlanta, Georgia, the Court, accordingly, will deny defendant's motions, and it is so ORDERED.

The Clerk is directed to mail a copy of this Memorandum Order to all counsel of record.

---

14. The one respect in which all the cases interpreting section 409 are in agreement is that the section, seemingly, has no legislative history.

15. In the order preceding the hearing, defendant was directed to produce witnesses in support of its position. For reasons of convenience or otherwise, however, it chose to rely on affidavits.