# Werner v. IA Construction Corp.

C.P. of Blair County, no. 99 GN 2460.

*Michael J. Colarusso,* for plaintiff.
*Linda L. Pretz,* for defendant I.A. Construction Corp.
*Brian H. Baxter, senior deputy attorney general,* for defendant PennDOT.
*William J. Stokan,* for additional defendant.

CARPENTER, *J.,* March 22, 2001—This matter is before the court for resolution of two motions to compel discovery filed on behalf of plaintiff, Joseph C. Werner, directed at defendant Department of Transportation. The matter was argued before the court to a conclusion on February 16, 2001. Briefs have been submitted and reviewed. The submissions filed by the Commonwealth also include briefs which were filed in the case of *Marion Clary v. PennDOT,* 4865 of 1998 (Westmoreland Cty.) in Westmoreland County. Having reviewed the various submissions and the applicable law (both state and federal), we will discuss the discovery issues in the order raised commencing with those issues which the Commonwealth contends represent ar-

eas of disagreement. We will then turn to those areas where we understand agreement exists and state those agreements.

## ISSUE NO. 1—PLAINTIFF'S ENTITLEMENT TO NAMES AND ADDRESSES OF INDIVIDUALS IN ACCIDENTS ALONG THE SUBJECT STRETCH OF ROAD THROUGH OBTAINING COPIES OF THE POLICE REPORTS

Plaintiff is seeking police reports sent to PennDOT for record keeping pursuant to 75 Pa.C.S. §§3751 and 3753. Plaintiff argues his entitlement to this discovery since PennDOT is the "central agency" for collection and storage of these police reports. Plaintiff seeks to separate the responsibilities of PennDOT as a central repository from the admittedly substantial protections afforded under 75 Pa.C.S. §3754.

PennDOT maintains this discovery is precluded by statutory enactments at both the state and federal level. At the state level, PennDOT cites to 75 Pa.C.S. §3754 which provides as follows:

"*(a) General rule.*—The department, in association with the Pennsylvania State Police, may conduct in-depth accident investigations and safety studies of the human, vehicle and environmental aspects of traffic accidents for the purpose of determining the causes of traffic accidents and the improvements which may help prevent similar types of accidents or increase the over-all safety of roadways and bridges.

"*(b) Confidentiality of reports.* In-depth accident investigations and safety studies and information, records and reports used in their preparation shall not be dis-

coverable nor admissible as evidence in any legal action or other proceeding, nor shall officers or employees or the agencies charged with the development procurement or custody of in-depth accident investigations and safety study records and reports be required to give depositions or evidence pertaining to anything contained in such in-depth accident investigations or safety study records or reports in any legal action or other proceeding. 1976, June 17, P.L. 162, no. 81, section 1, effective July 1, 1977. Amended 1986, December 11, P.L. 1530, no. 166, section 7, effective in 60 days."

PennDOT argues the confidentiality provided for in 75 Pa.C.S. §3754 extends to police reports.

The Commonwealth also argues a further prohibition exists under federal law. We are directed to 23 U.S.C. §409 as follows:

"Section 409. Discovery and admission as evidence of certain reports and surveys

"Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 152 of this title or for the purpose of developing any highway safety construction improvements project which may be implemented utilizing federal-aid highway funds shall not be subject to discovery or admitted into evidence in a federal or state court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data."

The Commonwealth argues both these statutes preclude discovery of police reports. We disagree.

In reaching that conclusion, we distinguish the role of PennDOT as a central repository for all reportable traffic accidents from their role in crash prevention, analysis of accident characteristics, and mitigation strategies to reduce the potential for further accidents contained in section 3753(a) and (b). There is no doubt in performing the latter function PennDOT is clearly entitled to protection. However, where the department is charged statutorily with the ministerial duty of maintaining a central repository we cannot fathom how this function defeats a discovery request where the request asks for no information beyond the reports themselves.

Such a request is violative of neither the letter nor the spirit of sections 3753(b) or 3754. In so holding, we distinguish between PennDOT's role as the required compiler of accident reports and any use which is made of the same which we would determine to be protected.

We believe we are also consistent with the federal statute as interpreted by federal courts. As stated in *Kitts v. Norfolk and Western Railway* 152 F.R.D. 78 (S.D. W.V. 1993), section 409 by definition potentially deprives fact-finders of at least some relevant evidence. As a result, it will be strictly construed to protect documents and data prepared for purposes of safety enhancement, but *not* for documents compiled for some other purpose, even if their contents or parts of them eventually become ingredients in a safety enhancement program. In the case before the court, PennDOT's role as a central repository falls far short of being specifically tailored for safety enhancement although (as in *Kitts*)

some parts of the contents of the reports could eventually become ingredients in a safety enhancement program. As such, we find this application consistent with Pennsylvania law.

It is also consistent with protecting both the rights of individual litigants and PennDOT. In this regard, to adopt the Commonwealth's position is to grant the Commonwealth a limited immunity given their role as the *only* central repository for this relevant information. We are mindful plaintiff is required to prove not only the dangerousness of the roadway but notice to the Commonwealth of the condition (whether the roadway is dangerous for some particular reason or generally). Without the ability to obtain reports from the central repository, plaintiff would be (at worst) precluded and (at best) substantially limited in his ability to proceed. If this was the intention of either the Pennsylvania Legislature or the federal government they could have said so and/or granted further immunity. That they did neither bolsters our analysis. We are also mindful plaintiff is not even asking if any safety study or evaluation was ever performed. This further highlights our belief plaintiff's request goes to the role of PennDOT as a central repository as opposed to other prohibited areas.

## ISSUE NO. 2—EVIDENCE OF
## SUBSEQUENT ACCIDENTS

Plaintiff next argues an entitlement to "post-accident accidents." In support of this request, plaintiff argues his burden to (1) establish a dangerous condition of the roadway existed on the day of the accident; (2) to show PennDOT had notice of a dangerous condition entitles

him to this discovery, plaintiff contends accidents subsequent to the accident in litigation are admissible to show a dangerous condition of the roadway if combined with a showing the condition of the roadway has not been changed since the accident.

PennDOT argues this evidence is not admissible so it should not be discoverable. We agree with PennDOT and preclude discovery. The weakness in plaintiff's argument goes to what is perhaps the most fundamental principle of admissibility of evidence—namely, does its probative value exceed its prejudicial effect. At trial, a jury will be asked to determine the dangerousness of the subject roadway and PennDOT's knowledge of that dangerous condition (constructive or otherwise) on the date in question. Evidence of subsequent accidents has only limited value. It is irrelevant to establish PennDOT's knowledge of dangerousness on the date in question. At most, to the degree it can be shown the road was unchanged and conditions were similar, the evidence could support to a limited extent dangerousness of the roadway argument. This is not straightforward. The very nature of roadways is they deteriorate over time. As such, prior accidents demonstrating a road already in a dangerous condition while also providing notice are truly the best evidence. This is simple common sense. Compared to its probative value, the cost for admitting this evidence is high. It places before the jury, accidents which by definition can play no part in PennDOT's knowledge of dangerousness on the date in question. At the same time, it creates a substantial risk of jury confusion/distraction to such a degree we conclude any potential probative value is outweighed by its prejudicial effect.

Worse, this is not a one-step process. Having allowed subsequent accidents into the case, we necessarily place PennDOT in the position of "defending" or "distinguishing" those accidents. All this can only serve to largely divert the jury from those considerations central to the case—namely, conditions and knowledge existing on the date in question—by creating a sideshow of limited relevance.

Accordingly, we preclude plaintiff's discovery request for police reports after the date of the accident in question.

## ISSUE NO. 3—WHAT CONSTITUTES THE APPROPRIATE TIME FRAME FOR DISCOVERY OF POLICE REPORTS

Having dealt with the issue of the discoverability of the police reports, it remains only to determine for what historical period of time plaintiff is entitled to this information. Plaintiff has requested the names and addresses of accident participants (through the police reports) for a period of five years prior to the accident. The Commonwealth contends such a time frame is unreasonable and burdensome and the discovery should be limited to three years prior to the accident. We agree with plaintiff that five years is appropriate.

In so holding, we do not attempt to create a rule to be applied in all cases. Further, it seems on the facts *of this case* a five-year period is appropriate. We base this on two considerations. First and primarily, in our case, IA Construction Corporation is a named defendant. The significance of IA Construction Corporation's involvement is it allegedly resurfaced the road in 1992. This

serves to make a five-year period of discovery potentially meaningful in terms of IA Construction's role in either taking out low spots or creating low spots in the road. Second, it is our understanding PennDOT generally uses a five-year period as its own "window" prior to any changes in road design/safety enhancement. For both of these reasons, we find the five-year period most appropriate in the present litigation.

Having dealt with the issues representing areas of disagreement we understand as follows as to the parties areas of agreement.

(1) PennDOT is agreeable to responding to the request for PennDOT publication 408 for the year of the accident (1997).

(2) PennDOT is agreeable to producing the record of the existence of "slippery when wet" signs for a period of time (as yet unstated) leading up to the accident.

(3) PennDOT is agreeable to providing plaintiff access to look through their records with respect to guardrail repair or a placement request which they have directed to citizens who have damaged guardrails and also the fact of guardrail repair provided that plaintiff conducts the review at the PennDOT location where the records are maintained.

It is our understanding this agreement is founded on the fact these records are kept "by county" so it would be extremely burdensome for PennDOT to research this discovery themselves.

Accordingly, and consistent with all of the above it is ordered, directed and decreed the discovery to take place shall be provided within 30 days of this order.

We note, parenthetically, it has been called to our attention while defendant IA Construction Corporation has been ordered to produce expert reports within a specific time frame that plaintiff has not. We believe we resolved this issue by our letter of February 22, 2001 in which we direct that expert reports were to be submitted by the next status conference or a scheduling order would be issued. It would be our expectation plaintiff would submit expert reports by that date. If he has not, specific deadlines will be imposed. If he has submitted reports and the defense has not, then a deadline will be imposed on the defense. All of this can occur at the June 8, 2001 conference without prejudice to any party.